**STATE of Minnesota, Respondent,**

v.

**Patricia Estelle KEMP a/k/a Patricia Estelle McBride, Appellant.**

**No. 51154.**

Supreme Court of Minnesota.

May 8, 1981.

C. Paul Jones, Public Defender, and Robert J. Streitz, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., Thomas W. Foley, County Atty., and Steven C. DeCoster, Asst. County Atty., St. Paul, for respondent.

## OPINION

PETERSON, Justice.

Defendant was found guilty by a district court jury of five charges: sale of cocaine, distribution of cocaine, possession of cocaine with intent to sell, possession of cocaine with intent to distribute, and simple possession of cocaine. The first four charges related to her sale of 4.4 grams of a powder containing 14% cocaine to an undercover drug agent through two middlemen on August 14, 1979; the last charge related to her constructive possession of .5 grams of powder containing 24% cocaine, which was found in a warranted search of her apartment on August 14, a short time after the sale of the other cocaine was completed.

The trial court ruled that the offenses all arose from the same behavioral incident. Relying on Minn.Stat. § 609.035 (1978), he therefore sentenced defendant only once, to a 15-year prison term for the conviction of possession with intent to sell, with the term to run consecutively to a prior imposed but unexecuted sentence of 3 years' imprisonment for a 1978 conviction of simple possession of cocaine. Shortly after the judge imposed the sentence, a different judge revoked the stay of execution of the prior sentence.

On this appeal from judgment of conviction defendant contends (1) that she is entitled to a new trial because her convictions were based in part on evidence which was obtained in violation of her fourth amendment rights, (2) that four of her five convictions should be vacated as being in violation of Minn.Stat. § 609.04 (1978), and (3) that the order that her sentence run consecutively should be vacated on the ground that a trial court may not order a sentence to run consecutively to a previously imposed but unexecuted sentence.

During the summer of 1979 agents of the Minnesota Bureau of Criminal Apprehension, James Hessel and Michael Campion, acting with the assistance of a convicted felon, Michael Chevestuik, who was serving as an informant, received information and made observations which convinced them that defendant, who lived in a six-unit apartment building on Marshall Avenue in St. Paul, was in the business of selling cocaine.

The final arrest of defendant occurred on August 14, 1979. On that day Chevestuik arranged a meeting between Hessel and Willard Brazil, Jr., a felon whom Chevestuik knew from prison. Hessel gave Brazil $600 in bills, the serial numbers of which, unknown to Brazil, Hessel had recorded. Chevestuik and Brazil then went to defendant's apartment building and, with Chevestuik waiting in the car, Brazil entered the building. Campion, on surveillance, saw defendant wait in her car until Brazil arrived and then saw her get out and enter the building.

After Hessel obtained the cocaine from Brazil, he left Brazil and Chevestuik and drove to the nearby MBCA headquarters, where he performed a field test which was positive for the presence of cocaine. Further analysis later would reveal that the powder weighed 4.4 grams and contained manitol, which is a cutting agent, and 14% cocaine. Campion also went to the headquarters and began preparing an application for a search warrant, which he obtained at about 7:20 p. m.

Meanwhile, other officers, acting under orders, had continued their surveillance of the apartment building. Shortly after 7 p. m. defendant, accompanied by a child, came out of the building, met a man out in front, and then got into her car with the man and the child and drove off. Officers followed her and, acting under orders, stopped her, arrested her, and towed and impounded her car.

The officers executed the warrant to search her apartment at 7:30 p. m. In the kitchen the officers found and seized a number of items, including a coin purse containing .5 grams of a 24% cocaine powder, a bottle of manitol, a magazine with pieces the size of bindle paper cut from it, a hash pipe, a gram scale and a sifter. In another room they found a mirror of the type commonly used to cut and package cocaine.

Another warrant was obtained the following day authorizing the search of her car, which her mother owned. In it the officers found defendant's purse and in the purse was $806.05 in cash, including $380 in bills whose serial numbers matched those given by Hessel to Brazil on August 14. Another $100 of the seized money was money which Hessel had used to purchase cocaine from another defendant.

At trial the state had the benefit of the testimony not only of Chevestuik and the officers but also the testimony of Brazil concerning the events of August 14. The trial court did not admit any other-crime evidence until rebuttal, at which time the state was permitted to introduce evidence of the events leading to defendant's 1978 conviction for possessing cocaine.

Defendant's version of what happened was that she did not know about the sale to Brazil but that a man named Martinez was in the kitchen by himself at the time and could have let Brazil in and made the sale. She denied that any of the cocaine was hers and claimed that she had received the money from Martinez, who told her when she left the apartment that he wanted her to keep it for him for a day or so.

■ 1. Defendant's first contention relates to the adequacy of the search warrant application. Defendant contends specifically that the affidavit did not satisfy the so-called *Aguilar* test. We summarized that test in *State v. Boerner*, 260 N.W.2d 564, 566 (Minn.1977), as follows:

Basically, the approach that is required by [*Aguilar*] is the so-called two-pronged analysis. That is, when a determination must be made whether there is or was probable cause to arrest or search partly on the basis of hearsay information, one must determine the reliability of the

manner in which the informant obtained his information and the credibility of the informant or the reliability of his information. After measuring the informant's report against these standards in order to assess its probative value, the determination then can be made whether there is or was probable cause to arrest or search.

For a detailed analysis of these relevant principles, see *State v. Siegfried*, 274 N.W.2d 113 (Minn.1978).

Defendant makes much of the fact that the affidavit did not inform the magistrate that on two occasions Chevestuik had set up buys which turned out to be "ripoffs," with the nature of the substance being completely misrepresented by the seller. However, it is apparently common for drug sellers not only to misrepresent the weight of the substance they sell but to misrepresent the nature of the substance. Significantly, the officers had no reason to believe that Chevestuik had anything to do with these ripoffs. Further, if anything, the affidavit underrepresented the evidence that Chevestuik had a good track record as an informant.

As for the reliability of the information, if the affidavit had simply recited that the informant had heard from the sellers that they got their cocaine from defendant, that would be one thing. But the fact is the affidavit contained much more. It referred to (a) information concerning defendant's association with a known major cocaine dealer, (b) information concerning defendant's earlier arrest on August 6 for cocaine dealing, (c) information concerning police observations of defendant at the time of a July 20 sale to Brazil, and (d) information concerning the police observation of defendant just before the August 14 sale to Brazil.

This, therefore, is not just a case in which the warrant was based on hearsay information from an unidentified police informant. Rather, the warrant was based on substantial corroborating evidence which made it highly probable that defendant was a cocaine dealer and was using her residence as a place of business. *See State v. Siegfried*, 274 N.W.2d 113, 115 (Minn.1978).

2. Defendant next raises the issue of the applicability of Minn.Stat. § 609.04 (1978).

Minn.Stat. § 609.035 (1978), which bars multiple sentencing for two or more offenses arising from the same behavioral incident, is not directly in issue here because the trial court ruled that it applied and the court sentenced defendant only for the offense of possession with intent to sell. The statute we are directly concerned with is section 609.04, which, as interpreted by the court—*see, e. g., State v. Chamberlain*, 301 N.W.2d 313, 315 (Minn.1981), and *State v. Koonsman*, 281 N.W.2d 487, 489 (Minn. 1979)—forbids two convictions of the same offense or of one offense and a lesser-included offense on the basis of the same criminal act.

■ The state's view is that there were two acts or courses of conduct here, one involving the possession and sale of the cocaine on August 14, one involving the continued possession, after the sale, of the cocaine found later that day in the search of the apartment. The state admits that it is improper to allow the convictions for possessing with intent to distribute and for distributing cocaine to stand, but argues that it is proper to allow the convictions both for possession with intent to sell and for selling to stand. Specifically, the state contends that while these convictions arose from the same course of conduct, they are not convictions for the same offense or for one offense and a lesser-included offense. The state argues that the conviction for simple possession was based on the continued possession of the other cocaine after the sale was completed, that it therefore was based on a different act or course of conduct, and that it should stand. In summary, the state believes that two convictions should be vacated and three allowed to stand.

In our opinion, the legislature in Minn. Stat. § 152.09, subd. 1 (1978), has sought to distinguish between people who simply possess controlled substances and people who sell them. The legislature has made it pos-

sible for the state to convict sellers without actually proving a sale; all that needs to be shown is possession with intent to sell. If a defendant either sells cocaine or possesses it with intent to sell, he is subject to a 15-year prison term under Minn.Stat. § 152.15, subd. 1(1) (1978). Since the prohibitions on selling and distributing and on possessing with intent to sell or distribute are aimed at the same basic conduct and are contained in the same statute, they should be deemed the same offense for purposes of section 609.04. Thus, where convictions for selling or distributing cocaine and possessing cocaine with intent to sell or distribute are based on one criminal act, only one conviction may be permitted to stand. Here the state concedes that those convictions were based on the same criminal act, a concession which was unavoidable in view of the way the state charged those four offenses.

■ Whether the defendant's continued possession, after the sale, of the cocaine found in the search may be said to have been a separate criminal act is an issue which the state does not concede. In support of its argument that the continued possession of the remaining cocaine was a separate act for purposes of section 609.04, the state relies heavily upon the fact that the substance which defendant sold was found to contain 14% cocaine whereas the substance found in the search was found to contain 24% cocaine. The state argues that the substance sold was from an entirely different source and that therefore there were two separate courses of conduct. On the other hand, the defendant argues that there were not necessarily two sources and that it is just as likely that the defendant had a powder containing 24% cocaine and that she took some of this and added a little more manitol, thereby reducing the percent of cocaine in it, before selling it to Brazil.

This disagreement illustrates the factual nature of a determination that two or more offenses were part of a single course of conduct and underscores the desirability of counsel first presenting to the trial court issues concerning the application of section 609.035 or 609.04. In future similar cases

we may decline to decide any issue concerning the applicability of either of these statutes unless the issue has first been presented to the trial court for decision. However, in this case, although counsel did not present the issue of the applicability of section 609.04 to the trial court first, the trial court did find, in connection with the application of section 609.035, that the offenses all were part of a single course of conduct. That determination, unless erroneous, should equally apply to the issue of the application of section 609.04. Our examination of the record satisfies us that that determination was not erroneous.

■ 3. The third and final issue is controlled by our recent decision in *Moffitt v. State*, 304 N.W.2d 31 (Minn.1981), where we held that a trial judge may impose a sentence to run consecutively to a previously imposed but unexecuted sentence.

Conviction for possession with intent to sell affirmed; four other convictions vacated.