**STATE of Minnesota, Respondent,**

v.

**Leonard McADOO, Appellant.**

No. C1–81–1295.

Supreme Court of Minnesota.

Feb. 11, 1983.

C. Paul Jones, Public Defender, and Mark F. Anderson, Asst. Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, County Atty., Vernon E. Bergstrom, Chief, Appellate Div., Thomas A. Weist, Rick Osborne and Beverly J. Wolfe, Asst. County Attys., Minneapolis, for respondent.

AMDAHL, Chief Justice.

Defendant was found guilty by a district court jury of a charge of simple robbery,

and was sentenced by the trial court to a prison term of 54 months, which is the presumptive sentence for simple robbery (severity level V offense,) when committed by a person with a criminal history score of six or more. On this appeal from judgment of conviction defendant contends that the trial court prejudicially erred in admitting *Spreigl* evidence and police identification photographs and that the trial court, in determining the presumptive sentence, erroneously computed defendant's criminal history score. We affirm.

Defendant's conviction was based on his participation with his brother in the robbery of a neighborhood grocery in Minneapolis on the afternoon of March 27, 1981. Defendant was first identified on March 30, when the cashier selected pictures of defendant and his brother from eight police identification photographs shown her. The cashier also identified defendant at trial.

The *Spreigl* evidence consisted of testimony linking defendant to the robbery of a cabdriver the night before the charged robbery. The cabdriver positively identified defendant's picture from the eight police identification photographs shown him on April 14. At trial he was unsure in his identification of defendant because defendant's hair length had changed but he was still positive in his identification of defendant's photograph.

1. Defendant's first contention is that the trial court prejudicially erred in admitting the *Spreigl* evidence. The various *Spreigl* requirements, including the notice requirement, are set forth in *State v. Billstrom,* 276 Minn. 174, 149 N.W.2d 281 (1967), *State v. Spreigl,* 272 Minn. 488, 139 N.W.2d 167 (1965), and Minn.R.Crim.P. 7.02. In this case defendant contends that two of the various *Spreigl* requirements were not complied with. Specifically, he argues that the court erred in accepting an offer of proof by the prosecutor rather than requiring a formal evidentiary hearing at which the cabdriver would testify before admitting the evidence. He also contends that the evidence was erroneously admitted because one of the prerequisites of admission, that the evidence connecting the defendant to

the other crime be clear and convincing, was not met.

■ The first contention, that the offer-of-proof procedure was inadequate to protect defendant's rights, is answered by *State v. Lindahl,* 309 N.W.2d 763, 766 (Minn.1981), where we upheld the use of the offer-of-proof procedure in such a situation.

■ Defendant's argument that the evidence connecting him to the other offense was not clear and convincing is based on the cabdriver's failure to positively identify him at trial and on the state's subsequent dismissal of the charges against defendant based on the robbery of the cabdriver. In our opinion, the subsequent dismissal does not in any way signify that the evidence connecting defendant to the robbery of the cabdriver was less than clear and convincing. The cabdriver positively picked defendant's picture and, although he was less sure in his identification of defendant at trial, he remained positive in his identification of defendant's picture. His inability to positively identify defendant at trial may well have been the result of defendant's having let his hair grow out by the time of trial. Bearing in mind that proof by clear and convincing evidence is not as high a standard as proof beyond a reasonable doubt, we hold that the record supports the conclusion that the evidence connecting defendant to the *Spreigl* offense was clear and convincing.

2. Defendant's contention that he was prejudiced by the admission of the police identification photographs is based on (a) the trial court's denial of a motion to cut the marginal police identification numbers off the police identification photos and (b) the victim's reference to the pictures as "mug shots." Defendant argues that the effect of the trial court's refusal and of the victim's testimony was that the jury learned that defendant had a criminal record.

■ Recent cases of this court bearing on this issue include *State v. Bellcourt,* 305 N.W.2d 340 (Minn.1981); *State v. Goar,* 295

N.W.2d 633 (Minn.1980); *State v. Seefeldt,* 292 N.W.2d 558 (Minn.1980); *State v. Serna,* 290 N.W.2d 446 (Minn.1980). As we made clear in those cases, the main reason for generally excluding police photographs is that the jurors might infer from them that the defendant has been involved in prior criminal conduct. The trial court, in determining whether to admit such photographs, must decide whether their probative value is substantially outweighed by the potential of the photographs for unfair prejudice. Minn.R.Evid. 403.

▮ In this case the trial court denied the motion to cut off the marginal numbers but did tape over the numbers. It is questionable whether cutting off the numbers would have been a great improvement over the taping, because, as the prosecutor pointed out, the pictures, cropped or uncropped, were clearly police identification pictures. Thus, the use of the term "mug shots" by the victim in her testimony, while unfortunate, did not tell the jurors anything that they would not have guessed on their own. As in *Goar,* although the photograph of defendant was taken in connection with a prior arrest, the jury was not told this; therefore, the jury did not necessarily know that the pictures were taken in connection with a prior arrest rather than the present arrest. Further, defendant's counsel made identification the key issue at trial and there was a great need for the evidence since the *Spreigl* witness, the cabdriver, was positive only in his identification of defendant's photograph, not in his identification of defendant at trial. Viewing the police photographs enabled the jury to understand how the cabdriver could positively identify defendant from his photograph but not in person at trial. Under the circumstances, we conclude that the trial court properly decided that the probative value of the evidence was not substantially outweighed by the potential of the evidence for unfair prejudice.

3. The final and main issue is whether the trial court erred in its computation of defendant's criminal history score. Under the provisions of Section II.B.1. of the Sentencing Guidelines an offender is assigned one felony point for every felony conviction for which a sentence was stayed or imposed before the current sentencing. Generally, under Minn.Stat. § 609.035 (1982), an offender who commits multiple offenses as part of a single behavioral incident may be punished for only one of the several offenses. There are, however, two exceptions. Under Minn.Stat. § 609.585 (1982), a person who commits a theft or other felony during the course of a burglary may be sentenced for any other such offense in addition to the burglary. And under a court-created exception to section 609.035, a defendant who commits multiple offenses in a single behavioral incident may be sentenced to one sentence per victim as long as the multiple sentencing does not unfairly exaggerate the criminality of the defendant's conduct. *State v. Marquardt,* 294 N.W.2d 849 (Minn.1980). The Sentencing Guidelines provide that in computing a defendant's felony point total, the court may not give a defendant more than one point for prior convictions arising from the same behavioral incident, even if defendant was sentenced for more than one of those convictions, except that if there were multiple victims the court may give the defendant a maximum of two points. Minnesota Sentencing Guidelines and Commentary, II.B. 1.a. and b. (1982). The Commission explained this policy in the Comment as follows:

II.B.102. In addition, the Commission established policies to deal with several specific situations which arise under Minnesota law. The first deals with conviction under Minn.Stat. § 609.585, under which persons committing theft or other felony offense during the course of a burglary could be convicted of and sentenced for both the burglary and other felony. In all other instances of multiple convictions arising from a single course of conduct, where there is a single victim, persons may be sentenced on only one offense. For purposes of computing criminal history, the Commission decided that prior multiple sentences under provision of Minn.Stat. § 609.585 should also receive

one point. This was done to prevent inequities due to past variability in prosecutorial and sentencing practices with respect to that statute, to prevent systematic manipulation of 609.585 in the future, and to provide a uniform and equitable method of computing criminal history scores for all cases of multiple convictions arising from a single course of conduct, where single victims are involved.

II.B.103. To limit the impact of past variability in prosecutorial discretion, the Commission placed a limit of two points on computing prior multiple felony sentences arising out of a single course of conduct in which there were multiple victims. For example, if an offender had robbed a crowded liquor store, he could be convicted of and sentenced for the robbery, as well as one count of assault for every person in the store at the time of the offense. Past variability in prosecutorial charging and negotiating practices could create substantial variance in the number of felony sentences arising from comparable criminal behavior. To prevent this past disparity from entering into the computation of criminal histories, and to prevent manipulation of the system in the future, the Commission placed a limit of two points in such situations. This still allows differentiation between those getting multiple sentences in such situations from those getting single sentences, but it prevents the perpetuation of gross disparities from the past.

In this case defendant received one custody status point, one gross misdemeanor/misdemeanor point (based on 16 misdemeanor/gross misdemeanor units), one felony point for a 1975 felony conviction, and four points for prior Illinois convictions.

Defendant was convicted in Illinois of two counts of attempted robbery, two counts of attempted murder, one count of attempted armed robbery, and one count of unlawful restraint and he received concurrent 7-year sentences. Those convictions were based on defendant's participation in a multiple-victim robbery and shoot-out with police on November 19, 1976. According to

police reports, on that day defendant and an accomplice went to a used car lot in Chicago, displayed a gun and forced the salesman into the office. The salesman complied but pressed a portable holdup alarm control in his coat pocket, summoning police. Inside, defendant and his accomplice robbed the salesman, another employee, and a customer who entered during the robbery. Then, when defendant and his accomplice saw that the police had arrived on the scene, they went into a back office. One of the two was heard to yell, "The cops are here, we're busted," and the other to respond, "Don't worry, we'll get him as he's coming in the door." When one of the officers entered, defendant pointed a gun at him but the officer shot him first. The officer then retreated and defendant and his accomplice remained holed up in the building, their guns drawn. Finally, after more shooting, both defendant and his accomplice were arrested.

The defendant argues that all the offenses were part of a single behavioral incident and that therefore he should be given a maximum of two felony points for the entire course of conduct. Defendant bases this on cases which hold that crimes committed by a defendant in merely attempting to avoid apprehension by police are a part of the same behavioral incident as the main crimes unless they are significantly separated in time and place from the main crimes. *See, e.g., State v. Boley*, 299 N.W.2d 924 (Minn.1980), and *State v. Mendoza*, 297 N.W.2d 286, 288 (Minn.1980).

On the other hand, the state argues that defendant and his accomplice in the Illinois crimes were not solely interested in escaping apprehension. The state contends that defendant and his accomplice made a decision to try to "get" the police, whether or not that was necessary to their escaping apprehension. The state argues that therefore the attempted murders were divisible from the robberies. In support of this conclusion it relies on cases in which this court has concluded that, under the circumstances, multiple crimes committed during the same basic course of conduct were divisible

for purposes of section 609.035. *See, e.g., State v. Scott,* 304 N.W.2d 296, 298 (Minn. 1981) (upholding consecutive sentencing for offense of criminal sexual conduct in the first degree and for offense of soliciting or inducing the same person to practice prostitution, because while defendant committed the act of criminal sexual conduct in furtherance of the scheme to turn the victim into a prostitute, defendant also had a separate, independent motivation for the act of criminal sexual conduct, namely, to satisfy his sexual impulses), and *State v. DeFoe,* 280 N.W.2d 38, 42 (Minn.1979) (suggesting that gratuitous assault of victim of robbery was not in furtherance of the robbery and that therefore the assault was divisible from the robbery).

■■■ As we have indicated in a number of cases, there is a "factual nature" to a determination that two or more offenses were part of a single behavioral incident. *See, e.g. State v. Kemp,* 305 N.W.2d 322, 326 (Minn.1981). The state has the burden of proving the facts which establish the divisibility of a defendant's course of conduct for purposes of section 609.035. The state also has the burden at a sentencing hearing of establishing the facts necessary to justify consideration of out-of-state convictions in determining a defendant's criminal history score. Minnesota Sentencing Guidelines and Commentary, II.B.5. (1982); *State v. Marquetti,* 322 N.W.2d 316, 319 (Minn.1982). We conclude that the state met its burden of establishing the divisibility of the course of conduct underlying the Illinois convictions. It is undisputed that defendant was convicted in Illinois of two counts of attempted robbery, two counts of attempted murder, one count of attempted armed robbery, and one count of unlawful restraint. The trial court was justified in relying on the police reports from Illinois in determining the circumstances of those convictions. Those reports, the accuracy of which is not suspect in this case, support the state's contention that the defendant and his accomplice made a decision to try to "get" the police, whether or not that was necessary to their escape. There is a difference between an attempt to escape appre-

hension by the police and a deliberate determination by an armed criminal to "get" the officer "as he's coming in the door." Thus, our present case is distinguishable from the ordinary flight-from-prosecution or flight-from-apprehension cases and the attempted murders were divisible from the attempted robberies. Defendant's conduct was not motivated solely by a desire to avoid apprehension but represented an escalation of the incident to a far more serious level. Under this analysis, the trial court was correct in its determination that the defendant's actions constituted a divisible, not unitary, course of conduct and therefore accrued four, not two, criminal history points.

Affirmed.

COYNE, Justice (dissenting).

Although I concur in the majority determination in parts one and two of the opinion that the trial court did not err prejudicially in admitting *Spreigl* evidence and police identification photographs, I respectfully dissent to the determination that the trial court properly computed his [defendant's] criminal history score.

In computing the defendant's criminal history score the trial court had before it the police report of the Illinois robbery which was interrupted by the arrival of the police. According to the report one of the robbers yelled "The cops are here, we're busted," then both went into an adjoining back office. One repeated the statement that they were "busted," and the other stated, "Don't worry, we'll get him as he's coming in the door."

The state, which has the burden of proving the facts which justify consideration of out-of-state convictions and establish the divisibility of a defendant's course of conduct for purposes of determining a defendant's criminal history score, contends that the dialogue between the two robbers implies a decision to "get" the police whether or not that was necessary to avoid capture. It seems to me, however, that either of two equally probable inferences may be drawn from their statements and the succeeding events: That the defendant was, as the

state contends, independently motivated by a desire to inflict injury on the police, or that shooting at the police was, as the defendant contends, simply the method by which the robbers hoped to effect their escape. Inasmuch as neither inference preponderates over the other, I conclude that the state has failed to demonstrate by a preponderance of the evidence the divisibility of the course of conduct—particularly in view of the absence of any evidence of the identity of the person who proposed that they could "get" the police.

If the Illinois convictions were treated as a single course of conduct, the maximum number of points attributable to them would have been two rather than four, and the defendant's criminal history score would have been five. The presumptive sentence for a single robbery, by a person who has a criminal history score of five, is 46 months.

I would reduce the sentence to 46 months.

WAHL, Justice (dissenting).

I join in the dissent of Justice Coyne.