**STATE of Minnesota, Respondent,**

v.

**Joshua Stafford BERTSCH, Appellant.**

**No. A04–177.**

Court of Appeals of Minnesota.

Nov. 30, 2004.

consider matters not presented to the district court). Respondent's motion to strike is granted.

Mike Hatch, Attorney General, and Susan Gaertner, Ramsey County Attorney, Jeanne L. Schleh, Assistant County Attorney, St. Paul, MN, for respondent.

John M. Stuart, State Public Defender, Theodora K. Gaitas, Assistant Public Defender, Minneapolis, MN, for appellant.

Considered and decided by MINGE, Presiding Judge, WILLIS, Judge, and HUSPENI, Judge.

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

## OPINION

HUSPENI, Judge.*

Appellant challenges sentences imposed by the district court for one count of dissemination of child pornography and 19 counts of possession of child pornography, arguing that multiple sentencing is barred because possession of child pornography is a lesser-included offense of dissemination of pornographic images and his acts were a single behavioral incident to which the multiple-victim exception does not apply. Appellant also argues that the district court erred in assigning a sentencing-guidelines level to the unranked offense of dissemination of child pornography, and in denying appellant's request for a dispositional departure from the guidelines sentence. Because we find that (1) possession of child pornography is a lesser-included offense of dissemination, but that appellant committed those two offenses at different times, (2) the 19 counts of possession were a single course of conduct to which the multiple-victim exception applies, (3) the sentencing-guidelines level assigned by the district court to the dissemination offense does not reflect proper consideration of comparable criminal activity designated at that level, and (4) the district court did not abuse its discretion in denying appellant's request for a dispositional departure, we affirm in part, reverse in part, and remand.

## FACTS

In April 2003, Illinois authorities informed the Minnesota Internet Crimes Against Children Task Force (MICAC) that an Internet file server distributing child pornography was operating out of Macalester College in St. Paul. On May 2,

Minn. Const. art. VI, § 10.

2003, MICAC executed a search warrant at a dorm room occupied by appellant Joshua Bertsch, a 22–year–old college senior, and seized three computers. During the execution of the search warrant, appellant agreed to speak with the police and acknowledged that he used a laptop computer as a file server[1] for child pornography.

Appellant posted a computer web banner soliciting preteen child pornography, and required users to upload pornographic images of the same computer size as the images these users downloaded from appellant's collection. As a result of this ease of Internet exchange, appellant's hard drive contained thousands of pornographic still images and movie files of minors.

Appellant told police that he preferred images of teenaged girls, but admitted that his file server contained pornographic images of very young children, along with images of teenage girls. According to Dr. Pribyl, the psychologist who examined appellant, "[f]or an adult male in his early twenties, it is normal to have an interest in teenage females." Appellant is extremely obese and the record indicates that this condition contributes to his low self-esteem.

Appellant was charged with one count of dissemination of child pornography and 19 counts of possession of child pornography and subsequently pleaded guilty to all counts. There was no negotiation regarding sentence; the parties agreed that sentencing would be within the court's discretion. At the plea hearing, appellant admitted to operating the file server from his dorm room. The file server was a "set-up-and-leave type thing. I would

start my computer and leave. Like I would go to class or whatever." Appellant did not know the identity of those who downloaded or uploaded images during this time, nor was he certain of the actual number of images that his computer contained. He stated that he had been looking at Internet pornography since he was about 14 or 15 years old. Once in college, he began downloading more pornography as a result of a high-speed Internet connection. Appellant described his collection of pornography as an addiction and stated that he found a great deal of satisfaction at having the collection. While appellant maintained that his primary interest was collecting images of teenagers, his computer contained images of younger children. He had both still images and movie clips on his computer. Appellant ultimately recognized that his actions were illegal and pleaded guilty to all the charges brought against him.

One week before appellant's sentencing hearing, the state filed an amended complaint that indicated an offense date for the dissemination charge different from that indicated for the possession charge. The amended complaint also listed with specificity the computer file names for each possession count.

At the sentencing hearing, the state argued that the district court should treat each image possessed as an individual offense against separate victims and asked the court to sentence appellant to 270 months in prison. Appellant argued that the possession offenses should be treated as a single incident and requested a 15–month stayed sentence. In support of his request, appellant presented numerous let-

---

1. The file server is an Internet chat room, managed by a moderator, in this case appellant, who sets the rules for the chat room. The rules dictate the specific interests explored there, and rules for exchanging infor-

mation. The structure of the file server allows those with common interests to share large volumes of samples, or information, regarding this interest at a ratio of information established by the moderator.

ters written on his behalf from family and friends, including many of his college professors. In addition, appellant noted that (1) he had recently been selected as a recipient of a full scholarship for graduate studies in history; (2) he was a high academic achiever, with a 4.0 GPA at the time of his graduation from high school; (3) he had no prior criminal history; and (4) a recent psychological evaluation concluded that he was amenable to probation.

During sentencing, the district court was required to determine the appropriate offense severity levels because both dissemination and possession of child pornography are unranked offenses under the Minnesota Sentencing Guidelines. After receiving motions and memoranda regarding the ranking of these offenses from both parties, the court ranked the dissemination charge as a level VIII offense, possession of still images as a level IV offense, and possession of movie images as a level V offense. The court imposed sentences on the dissemination charge and on each of the 19 possession charges, relying on the multiple-victim exception to the provisions of Minn.Stat. § 609.035 (2002) in sentencing on the possession charges. Appellant was sentenced to 78 months in prison—48 months on the dissemination conviction, a consecutive 12 months and a day for one of the possession convictions relating to still images, and a consecutive 18 months for one of the possession convictions relating to movie images. This appeal followed.

## ISSUES

I. Is possession of child pornography a lesser-included offense of dissemination of child pornography?

II. Did the district court err in imposing separate sentences for the 19 counts of possession of child pornography and one count of dissemination of pornography?

III. Did the district court err in its assignment of severity levels?

IV. Did the district court abuse its discretion in denying appellant's request for a probationary sentence?

## ANALYSIS

### I. Lesser–Included Offense

Appellant argues that the crime of possession of child pornography is a lesser-included offense of the crime of dissemination of child pornography. In determining whether an offense is a necessarily lesser-included offense, a reviewing court looks at the elements of the offense rather than at the facts of the particular case. *State v. Roden,* 384 N.W.2d 456, 457 (Minn.1986). If it is impossible to commit the greater offense without also committing the lesser offense, the lesser offense is necessarily included in the greater offense. *Id.*

In Minnesota, a person may not be convicted twice for the same crime or a crime included within that crime. Minn. Stat. § 609.04, subd. 1 (2002), provides:

Upon prosecution for a crime, the actor may be convicted of either the crime charged or an included offense, but not both. An included offense may be any of the following:

(1) A lesser degree of the same crime; or

(2) An attempt to commit the crime charged; or

(3) An attempt to commit a lesser degree of the same crime; or

(4) A crime necessarily proved if the crime charged were proved; or

(5) A petty misdemeanor necessarily proved if the misdemeanor charge were proved.

The purpose of Minn.Stat. § 609.04 (2002) is twofold: (1) to prevent a defendant from being "convicted twice of the same offense . . . based on the same act," *State v. Hodges,* 386 N.W.2d 709, 710 (Minn.1986), and (2) to bar "the prosecutor from exaggerating the criminality of the defendant's conduct by obtaining two convictions of the same offense simply because the defendant's single act violated two different provisions of the same statute." *State v. Patch,* 329 N.W.2d 833, 837 (Minn.1983).

## A. Statutory Construction

 Courts must look at statutory definitions rather than the facts in a particular case to determine if a lesser offense is necessarily included so as to preclude conviction for both the greater and included offense. *State v. Gayles,* 327 N.W.2d 1, 3 (Minn.1982). Whether a statute has been properly construed is a question of law subject to de novo review. *State v. Murphy,* 545 N.W.2d 909, 914 (Minn.1996).

Appellant was charged with both dissemination and possession of child pornography, which are defined in different subdivisions of the same statute. Minn.Stat. § 617.247, subd. 3(a) (2002), defines dissemination as:

A person who disseminates pornographic work to an adult or a minor, knowing or with reason to know its content and character, is guilty of a felony and may be sentenced to imprisonment for not more than seven years and a fine of not more than $10,000 for a first offense and for not more than 15 years and a fine of not more than $20,000 for a second or subsequent offense.

Minn.Stat. § 617.247, subd. 4(a) (2002), defines possession as:

A person who possesses a pornographic work or a computer disk or computer or other electronic, magnetic, or optical storage system or a storage system of any other type, containing a pornographic work, knowing or with reason to know its content and character, is guilty of a felony and may be sentenced to imprisonment for not more than five years and a fine of not more than $5,000 for a first offense and for not more than ten years and a fine of not more than $10,000 for a second or subsequent offense.

Based on the language of the statute, and the fact that both offenses are defined within the same statute, we conclude that appellant is correct in arguing that possession is a lesser-included offense of the offense of dissemination. In order for a person to disseminate something, that person must also possess it. *See Roden,* 384 N.W.2d at 457 (holding that when it is impossible to commit the greater offense without committing the lesser offense, the lesser offense is a necessarily included offense). Possession of child pornography and its dissemination fit within the criteria as set out in Minn.Stat. § 609.04, subd. 1. We conclude that possession is a lesser-included offense of dissemination, and that the protections of Minn.Stat. § 609.04, subd. 1, are implicated as a general rule. Our analysis of the two offenses in the context of the facts of this case, however, cannot end with that conclusion.

## B. Separate Behavioral Acts

Minn.Stat. § 609.04 bars a court from entering two convictions for one act simply because a defendant's single act violated multiple provisions of a statute. *Patch,* 329 N.W.2d at 837; *see State v. Koonsman,* 281 N.W.2d 487, 489 (Minn.1979) (noting state cannot avoid application of rule by fashioning separate counts). If, however, the commission of two offenses—one of which is a lesser included of the other—occur at different times, the preclu-

sive effect of section 609.04 is brought into question.

██ Appellant argues that in determining whether conduct constitutes one or more criminal acts, cases involving distribution and possession of drugs are informative. Specifically, appellant relies on *State v. Kemp*, 305 N.W.2d 322 (Minn. 1981), in which defendant distributed cocaine and later that same day was found to possess more cocaine. He was subsequently charged with both distribution and possession of cocaine. On appeal from convictions for both distribution and possession, the supreme court vacated several convictions, determining that "where convictions for selling or distributing cocaine and possessing cocaine with intent to sell or distribute are based on one criminal act, only one conviction may be permitted to stand." *Id.* at 326. *Kemp*, however, is distinguishable from the case at bar. As the state points out, the court in *Kemp* found that the distribution and possession took place within the same day, thus making the offenses part of a single act. Here, according to the amended complaint, appellant disseminated child pornography in April 2003 and his 19 counts of possession were alleged to have occurred May 1, 2003.[2] Under the amended complaint, the commission of the offense of dissemination is alleged to have occurred on or about

April 2003 and the commission of the possession offenses is alleged to have occurred on or about the first day of May 2003. This is a substantial distinction in time from the offenses in, and compels a conclusion that the protections of Minn.Stat. § 609.04, subd. 1, are not applicable in this case. The district court did not err in so determining.

## II. Possession Sentences

### A. Nineteen Sentences

█ Appellant argues that the district court erred in imposing sentences for each of the 19 counts of possession. To the extent that appellant's argument is based on his claim that these 19 counts of possession arose from a single behavioral incident, there is no indication in the record that the district court disagreed with that assessment. Nonetheless, a brief review of the statutory language addressing this issue is warranted.

 Minn.Stat. § 609.035, subd. 1 (2002), provides that "if a person's conduct constitutes more than one offense under the laws of this state, the person may be punished for only one of the offenses[.]" "The principle that only one sentence may be imposed based on a single behavioral incident protects defendants from both multiple sentences and multiple prosecu-

---

2. A potentially troubling issue is present in the amended complaint. For the first time on appeal, appellant urges that the amended complaint was invalid because it was filed after he had entered his plea.

Minn. R.Crim. P. 17.05 permits the preverdict amendment of complaint if no additional or different offense is charged and the defendant's substantial rights are not prejudiced. The state argues that this rule applies to commencement of trial and attachment of jeopardy, but does not apply to guilty pleas. *See State v. Weltzin*, 618 N.W.2d 600, 603 (Minn.App.2000); *State v. Guerra*, 562 N.W.2d 10, 12–13 (Minn.App.1997). Further, the matter of allowing amendments to com-

plaints is within the district court's discretion. *Gerdes v. State*, 319 N.W.2d 710, 712 (Minn. 1982).

Even if respondent is incorrect in its argument that rule 17.05 has no application in the context of a guilty plea, we nonetheless recognize that appellant made no objection to the amended complaint during the week prior to sentencing, nor at the sentencing hearing itself. This court will generally not consider matters not argued or considered in the district court. *State v. Sorenson*, 441 N.W.2d 455, 459 (Minn.1989). We conclude, therefore, that this issue was not preserved for appeal.

tions and ensures that 'punishment ... will be commensurate with the criminality of defendant's misconduct.' " *State v. Williams*, 608 N.W.2d 837, 841 (Minn. 2000) (citations omitted). Minn.Stat. § 609.035 (2002) "broaden[s] the protection afforded by our constitutional provisions against double jeopardy." *State v. Johnson*, 273 Minn. 394, 400, 141 N.W.2d 517, 522 (1966).

■■■ If a defendant commits multiple offenses against the same victim during a single behavioral incident, the defendant may be sentenced on only one of those offenses. *State v. Bookwalter*, 541 N.W.2d 290, 293 (Minn.1995). Whether multiple offenses arise out of a single behavioral incident depends on the facts and circumstances of a particular case. *State v. Hawkins*, 511 N.W.2d 9, 13 (Minn.1994). In determining whether multiple offenses arise from a single behavioral incident, this court must consider the defendant's singleness of purpose, i.e., whether the defendant was "motivated by a desire to obtain a single criminal objective." *State v. Chidester*, 380 N.W.2d 595, 597 (Minn.App. 1986), *review denied* (Minn. Mar. 21, 1986). We must also consider whether the offenses (1) arose from a continuous and uninterrupted course of conduct, (2) occurred at substantially the same time and place, and (3) manifested an indivisible state of mind. *Id.; see also State v. Soto*, 562 N.W.2d 299, 304 (Minn.1997).

There is little caselaw addressing the application of section 609.035 in the context of computerized possession of child pornography. Appellant argues that Minnesota courts have consistently held that where there are multiple counts stemming from the possession of multiple unlawful items at the same time and place, multiple sentences are not permitted because the conduct constitutes a single behavioral incident. *See State v. Carlson*,

291 Minn. 368, 380–81, 192 N.W.2d 421, 429 (1971) (holding that the multiple sentences of defendants based on 29 counts of possession of obscene materials in a retail store with intent to sell were a single behavioral incident); *State v. Barnes*, 618 N.W.2d 805, 813 (Minn.App.2000) (holding that possession of marijuana and cocaine in the same bedroom, packaged for sale, was a single behavioral incident), *review denied* (Minn. Jan. 16, 2001); *State v. Reese*, 446 N.W.2d 173, 180 (Minn.App. 1989) (noting that possession of two controlled substances at the same time and place, for personal use, constitutes a single behavioral incident), *review denied* (Minn. Nov. 15, 1989); *State v. Zimmerman*, 352 N.W.2d 452, 454 (Minn.App.1984) (holding that a defendant's simultaneous possession of marijuana and cocaine was a single behavioral incident).

■■■ Appellant makes a persuasive argument that the offenses in this case are most analogous to cases involving possession of illegal drugs in which Minnesota courts have held that possession of different types of drugs for the same purpose (i.e., personal use, or intent to distribute) involve a single behavioral incident. Further, the state has the burden to establish by a preponderance of the evidence that the conduct underlying the offenses did not occur as part of a single behavioral incident. *Williams*, 608 N.W.2d at 841–42; *see also State v. Zuehlke*, 320 N.W.2d 79, 82 (Minn.1982) (noting the state has the burden of proof on the single behavioral incident issue). Our review of the record reveals a brief discussion during the sentencing hearing addressing the question of when files were downloaded onto appellant's computer. Mindful of the state's burden to prove by a preponderance of the evidence that the possession offense did not occur as part of a single behavioral incident, we conclude that if, indeed, this

question even remains in issue, that burden has not been met. It is possible that the downloads were seconds apart, minutes apart, hours apart, or days apart. The record is not clear.

Finally, and most important for our discussion of the applicability of Minn.Stat. § 609.035 to the facts of this case, we reach the inescapable conclusion that, even though the district court did not specifically indicate that appellant's possession charges were found to have arisen out of a single behavioral incident, the court, in applying the multiple-victim exception, must have agreed that they had. The multiple-victim exception has no application except in the context of conduct that otherwise comes within the protection of section 609.035. *See, e.g., State v. Marquardt,* 294 N.W.2d 849, 850–51 (Minn. 1980); *State v. Lingwall,* 637 N.W.2d 311, 314 (Minn.App.2001); *State v. Lundberg,* 575 N.W.2d 589, 591–92 (Minn.App.1998), *review denied* (Minn. May 20, 1998). We agree with the district court's implicit recognition that appellant's possession charges arose from a single behavioral incident.

## B. Multiple Victims

█ As noted above, Minn.Stat. § 609.035 generally prevents imposition of more than one sentence for a single behavioral incident. A judicially created exception, however, permits the court to disregard the limiting effect on sentencing presented by that statute when there are multiple victims. *See Marquardt,* 294 N.W.2d at 851 (applying the multiple-victim exception as long as the sentences do not unfairly exaggerate the criminality of the defendant's conduct); *see also Lingwall,* 637 N.W.2d at 314; *Lundberg,* 575 N.W.2d at 591–92. The district court invoked the multiple-victim exception to Minn.Stat. § 609.035 here when it imposed 19 sentences for possession of child pornography.[3] Invocation of that exception presents an issue of first impression, one that is both troubling and emotion-laden.

Appellant argues that Minnesota courts have overwhelmingly applied the multiple-victim exception to single behavioral incidents only in cases where victims were *directly* harmed by a defendant's actions. Appellant cites a number of Minnesota cases in support of this proposition. *See Marquardt,* 294 N.W.2d at 850–51 (affirming separate sentences for five counts of aggravated assault where the defendant planted a firebomb at a house while five residents were at home); *State v. Oates,* 611 N.W.2d 580, 587 (Minn.App.2000) (affirming the imposition of multiple sentences for multiple assaults on multiple victims during an incident in a nightclub); *Lundberg,* 575 N.W.2d at 592 (affirming the imposition of multiple sentences where two victims, one a person and one a business, suffered loss as a result of the defendant's thefts); *cf. State v. Wipper,* 512 N.W.2d 92, 94–95 (Minn.1994) (vacating multiple sentences for murder and arson where the district court erroneously concluded that the victim's brothers, who shared the victim's house, were also victims of arson).

Appellant argues that because he did not take part in any direct victimization

---

**3.** The district court indicated at sentencing that it had reviewed all of the images, and concluded that appellant could receive 19 sentences for possession. Given the particular circumstances of this case, the unique difficulties involved in identification of victims of child pornography, and the ease with which pornographers may frustrate the entire effort to identify victims by covering or otherwise altering images of children's faces, our independent review of the images persuades us that the district court did not err in its inferential identification of 19 victims.

(i.e., he did not participate in the actual creation of the images or the direct abuse or molestation of the children), he should not be punished at the same level as persons who directly harmed the children. He argues, in effect, that while the individuals who were involved in the actual posing and photographing of the children directly victimized each child and should be subject to the multiple-victim exception to the statute, his involvement was distanced enough from that activity that the judicially imposed exception should not apply here. Implicit in this claim is an argument that when one engages in a single act of downloading, that act may result in receipt of thousands of images, although there would have been no intent that such a result would occur. Appellant in effect argues that if the multiple-victim exception were to be invoked in such circumstances, prosecutors, in their discretion, could bring thousands of possession charges with the assurance that there would be no statutory bar to the imposition of thousands of sentences resulting from one act of downloading of images; a condition that would certainly exaggerate the criminality of the conduct of an individual accused of possession of child pornography.

Respondent, while recognizing that the multiple-victim exception to Minn.Stat. § 609.035 originated in the judiciary, nonetheless urges this court to look to the legislative intent of the child pornography statutes in our quest to define "victim" under those statutes. We note initially a certain incongruity in the proposition that courts should seek guidance from legislative enactments in order to discern how broadly a judicially created exception to a statute should be applied. Logic prompts us to question whether that guidance might more properly, or even exclusively, be sought by reviewing the caselaw that has applied the multiple-victim exception.

A review of caselaw applying the multiple-victim exception to Minn.Stat. § 609.035 convinces this court that each of the perpetrators in those cases had far more direct contact with the victims than does an accused downloading images from a computer remote in time and place from the reprehensible individuals who do have direct contact with victims.

Despite our concern that a judicially created exception may be more appropriately construed by seeking guidance in caselaw, we believe our analysis of how the multiple-victim issue is to be resolved in the context of possession of child pornography must include a review of both the text and the legislative policy language of Minn. Stat. § 617.247 (2002). The policy statement behind the enactment of this statute provides that the law exists

> to protect minors from the physical and psychological damage caused by their being used in pornographic work depicting sexual conduct which involves minors. It is therefore the intent of the legislature to penalize possession of pornographic work ... in order to protect the identity of minors who are victimized by involvement in the pornographic work, and to protect minors from future involvement in pornographic work depicting sexual conduct.

Minn.Stat. § 617.247, subd. 1. This language underscores the importance of the public policy favoring protection of minors. Perhaps an argument could be made that the legislature's use of the word "minors" connotes that it is a group that is to be protected, and that courts should not be permitted to extend the judicially created multiple-victim exception to punish more severely those who, like appellant, only possess child pornography and have no direct contact with any individual child.

An identical argument might be made upon review of the language that sets forth the elements of possession of child pornography. Minn.Stat. § 617.247, subd. 4(a), provides in relevant part:

A person who possesses a pornographic work or a computer disk or computer or other electronic, magnetic, or optical storage system or a storage system of any other type, containing a pornographic work, knowing or with reason to know its content and character, is guilty of a felony.

Because of the current ease of electronic Internet transmission and the voluminous amounts of information that can be downloaded in a matter of minutes, it may be at least arguable that each electronic storage system containing pornographic works should be treated as a singular possession. Respondent, however, argues that statutory reference to a singular "pornographic work" supports the conclusion that each discrete image is a separate crime against a separate victim.

We conclude that the position of respondent on the question of whether appellant's conduct involved 19 victims or one victim (a group of minors) is the more credible one. This conclusion is bolstered by our consideration of the concerns expressed by the United States Supreme Court in *New York v. Ferber*, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982). Although *Ferber* involved the sale of child pornography, not solely its possession, the observations made by the court regarding the effects of the involvement of children in this pernicious activity clearly inform our decision on the question of whether there are multiple victims in this case. The *Ferber* court observed that "[t]he prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance." *Id.* at 757, 102 S.Ct. at 3355. Further, "the use of

children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child." *Id.* at 758, 102 S.Ct. at 3355. The court also observed, "[i]t has been found that sexually exploited children are unable to develop healthy affectionate relationships in later life, have sexual dysfunctions, and have a tendency to become sexual abusers as adults." *Id.* at 758 n. 9, 102 S.Ct. at 3355 n. 9.

Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography.

It is the fear of exposure and the tension of keeping the act secret that seem to have the most profound emotional repercussions.

*Id.* at 760 n. 10, 102 S.Ct. at 3356 n. 10 (quotations and citations omitted).

We believe that each of the children identified by the district court in the images possessed by appellant was at least potentially likely to suffer any or all of the tragic consequences identified by the *Ferber* court. Therefore, we conclude that the district court did not abuse its discretion when it determined that each of the children identified in the images was a victim.

■ Our decision that the judicially created multiple-victim exception to Minn. Stat. § 609.035 is applicable to the facts of this case is not one arrived at without reservation. We are aware of Minn. Sent. Guidelines cmt. II.B.103, which recognizes, in part, that "[p]ast variability in prosecutorial charging and negotiating practices could create substantial variance in the number of felony sentences arising from comparable criminal behavior." Prosecu-

torial discretion is of critical importance in cases of child pornography involving computers. Surely, prosecutors must continue to be free to exercise the broad discretion that is properly vested in them. Because of the ease of movement of electronic data, however, a very large number of images can be uploaded or downloaded in a very short period of time, sometimes even without the possessor's knowledge. While the state in this case exercised its discretion and selected 19 images in charging appellant, it is possible that in another case 50, 100, or more may be selected for prosecution. These concerns are more properly addressed by the Minnesota Supreme Court, however; it is that court, we believe, which should define any limitations which may be appropriately imposed on the application of the multiple-victim exception to Minn.Stat. § 609.035 in cases involving possession of child pornography.

Further, if our construction of the statutory language does not comport with the legislative intent regarding the extent of victimization in cases of possession of child pornography, nor with the scope of the public policy the legislature intended to announce, that body should be requested to clarify or modify the statutory pronouncements to the extent deemed necessary or advisable.

## C. Exaggeration of Criminality

### 1. Criminal-history score

■ Appellant argues that even if this court finds that the multiple-victim exception applies, the district court erred (1) by using *State v. Hernandez*, 311 N.W.2d 478 (Minn.1981), in its calculation of his sentence, and (2) as a result of this sentence, by unfairly exaggerating the criminality of his offense. In *Hernandez*, the supreme

court held that when a district court sentences an offender for several offenses on the same day, the court may count each conviction in the offender's criminal-history score. *Id.* at 481.

According to Minn. Sent. Guidelines II. B.1.c., however, the district court, in sentencing for a single behavioral incident with multiple victims, is limited in its use of the sentences to enhance an offender's criminal-history score. Section II.B.1.c. provides that a sentencing court shall use only the "two offenses at the highest severity level" arising out of a single course of conduct in assessing a criminal-history score, in order to create uniformity in sentencing. *See also* Minn. Sent. Guidelines cmt. II.B.103 (stating that "[t]his limit in calculating criminal history when there are multiple felony sentences arising out of a single course of conduct with multiple victims also applies when such sentences are imposed on the same day."). Our review of the record indicates that the criminal-history score compiled for appellant does not comply with the limitations set forth in the sentencing guidelines. Indeed, it appears from the sentencing worksheet that appellant, when sentenced on the final conviction for possession, would have 19 criminal-history points. That number is inappropriate under the sentencing guidelines.[4] Appellant's criminal-history score should be calculated using only the "two offenses at the highest severity level" and not all 19 of the offenses charged. We remand this issue to permit the district court to apply Minn. Sent. Guidelines II.B.1.c. to the criminal-history score of appellant.

### 2. Consecutive sentences

■ Appellant also challenges the year-and-a-day and the 18–month sen-

---

4. Inappropriateness is found despite the fact that the criminal-history score set out in the sentencing guidelines grid has a maximum of

"6 or more," and arguably sentences for future misconduct would not be increased by criminal-history scores of 7 or above.

tences for possession of child pornography. The district court ordered that these two sentences be served consecutive to the sentence imposed for dissemination. The court also ordered that the consecutive sentences be executed. This was error.

We note initially that, under Minn. Sent. Guidelines II.F., a sentence imposed consecutively is to be imposed using a zero history score. Therefore, both of the consecutive sentences imposed by the district court (even assuming for this analysis the validity of level IV and level V severity assignments) would be presumptively stayed under the sentencing guidelines. By ordering that these sentences be executed, the district court departed from the guidelines. The record is silent regarding any basis for the departure, and it is possible that such departure was unintentional. On remand, and consistent with our analysis of severity levels later in this opinion, the district court shall follow the directives of the sentencing guidelines.

## III. Severity Levels

■ Appellate courts generally will not interfere with the exercise of the district court's broad discretion in applying the Minnesota Sentencing Guidelines. *State v. Back,* 341 N.W.2d 273, 275 (Minn.1983). "A trial judge sits with a unique perspective on all stages of a case, including sentencing, and the trial judge is in the best position to evaluate the offender's conduct and weigh sentencing options." *State v. Hough,* 585 N.W.2d 393, 397 (Minn.1998). But recently, the supreme court has emphasized the general power of appellate courts to modify sentences that are unreasonable or excessive under Minn.Stat. § 244.11, subd. 2(b) (2002). *See, e.g., Taylor v. State,* 670 N.W.2d 584, 589–90 (Minn. 2003); *Neal v. State,* 658 N.W.2d 536, 546 (Minn.2003). That emphasis, it seems to this court, is especially pertinent in this

case. The district court ranked appellant's dissemination offense at a severity level of VIII and it ranked the possession offenses at IV and V, distinguishing between still images (IV) and movie images (V).

The Minnesota Sentencing Guidelines are represented by a grid, with categories of offense-severity levels on the vertical axis and offender criminal-history scores on the horizontal axis. Minn. Sent. Guidelines IV. The guidelines assign a severity level to most offenses, but certain offenses are left unranked. The offenses of possession and dissemination of child pornography are among those unranked offenses. According to the sentencing guidelines, "[w]hen persons are convicted of offenses excluded from the Offense Severity Reference Table, judges should exercise their discretion by assigning an offense a severity level which they believe to be appropriate." Minn. Sent. Guidelines cmt. II.A.05.

In *State v. Kenard,* 606 N.W.2d 440 (Minn.2000), the Minnesota Supreme Court reversed the district court's severity-level determination for an unranked offense. In doing so, the court underscored the importance of the sentencing guidelines in these matters, when it stated, "[t]he sentencing guidelines ... provide a framework sentencing courts can use when determining the offense severity level of unranked offenses." *Id.* at 443. The court noted that this framework is found within the Purposes section of the sentencing guidelines, which recommends that

> sanctions following conviction of a felony are proportional to the severity of the offense of conviction and the extent of the offender's criminal history. Equity in sentencing requires (a) that convicted felons similar with respect to relevant sentencing criteria ought to receive similar sanctions, and (b) that convicted felons substantially different from a typical case with respect

to relevant criteria ought to receive different sanctions.

Minn. Sent. Guidelines I. The supreme court, in, conducted a comparative analysis of similar offenses and contrasted the specific facts of each case with the facts of *Kenard.* 606 N.W.2d at 443–45. Ultimately, the supreme court found that the district court had abused its discretion because there was no indication in the record of what factors, if any, it considered when it assigned offense severity level VII to Kenard's offense. And, as a result, the supreme court concluded that it was almost impossible for a reviewing court to evaluate the sentencing court's exercise of discretion. *Id.* at 442–43.

We decide initially that the assignment of level IV to the possession of still images is within the broad discretion of the district court, and we affirm that assignment.[5] But with regard to the assignment of level V to the possession of video images, we find no support in the statute for the distinction made between still and video images, and thus cannot affirm the level V severity level. Had the legislature wished to define the possession of video images as a possession offense distinct from and more serious than that of the possession of still images, it could have done so. It did not. Without an indication to the contrary from the legislature, we conclude that the evil to be eliminated—the tragic abuse and exploitation of minors—and the conduct constituting the offense of possession of child pornography, are both addressed without a distinction such as that made by the district court in sentencing as it did. We remand this issue to enable the district court to rank the video images as level IV and to modify the consecutive sentence

imposed for possession of a video image consistent with this severity level reassignment and with the analysis of consecutive sentences set forth in the previous section.

■ With regard to the assignment of level VIII to appellant's dissemination conviction, we share some of the same concerns that were expressed by the court in *Kenard.* Appellant first urges that the district court abused its discretion by not properly applying the *Kenard* factors. Specifically, he complains that the district court relied on the prosecutor's statement that appellant's collection of child pornography was larger than other offenders, and based the severity determination solely on that representation. Appellant also argues that the court failed to recognize mitigating factors in appellant's conduct, and failed to apply severity rankings reflective of the rankings in cases involving conduct similar to his. The state argues here, as it did before the district court, that in light of the large number of images on appellant's computer, the district court properly exercised its discretion in ranking dissemination at level VIII.

At sentencing, the district court recognized the importance of both *Kenard* and the sentencing guidelines when it stated:

> Now, in looking at the ranking, I have looked at ... *State v. Kenard,* ... which indicates that the court should look at, in an unranked offense—this found in Minnesota Sentencing Guidelines Comment, IIA05, that the Court should look at the gravity of the specific conduct underlying the offense, the severity level for similarly ranked offenses, and the

**5.** Our review of the sentencing guidelines data, which is a compilation of assignment of severity levels to possession of child pornography in other similar cases provided by the state in its appellate brief to this court, reveals

that this level is consistent with most prior assignments. The average ranking for possession of child pornography between 2000 and 2003 is level III. Minn. Sent. Guidelines Data, Detailed Case Information.

conduct of similarly situated offenders. It says in the case, *Kenard,* that no single factor is controlling and the list of factors is not meant to be exhaustive, but the Court, in exercising its discretion, should look at those various factors. I have carefully, in considering the ranking of these particular offenses, considered all of those factors. The third particular factor, the conduct of similarly—situated offenders—from what I have been able to glean from everything that has been presented to me and from some additional cases that I have read—there is at this point in the law no case that is similarly situated in your particular instance and that is because of the incredibly large volume of child pornography that was maintained as part of your collection.

At the sentencing hearing, the court clearly emphasized the fact that appellant's computer contained a very large amount of child pornography. We conclude that in establishing the severity level VIII ranking for dissemination, this large amount was effectively the sole factor on which the court relied. *Kenard,* we believe, requires a more thorough analysis than is reflected on the record.

One *Kenard* factor is a determination of the gravity of the conduct, as reflected in the statutory elements. Specifically, the court stated:

> By specific conduct, we mean that conduct underlying proof of the elements of the offense. While we have held that such conduct cannot be relied on to justify an upward departure, *State v. Peterson,* 329 N.W.2d 58, 60 (Minn.1983), we conclude that its use is appropriate for setting the severity level for unranked offenses. Once the sentencing court has determined the severity level by considering the conduct underlying proof of the elements of the offense, it is not prohibited, in appropriate cases, from considering whether there are also aggravating or mitigating circumstances that would justify departure.

606 N.W.2d at 443 n. 3.

Another *Kenard* factor is a determination of the severity levels assigned to ranked offenses whose elements are similar. The sex-related offenses most similar to the dissemination of child pornography are the crimes of (1) soliciting a child to engage in sex (2) fourth-degree criminal sexual conduct, and (3) fifth-degree criminal sexual conduct. The offense of soliciting a child to engage in sex is ranked at level III, the offenses of fourth- and fifth-degree criminal sexual conduct involving a child are ranked, respectively, at levels VI and IV. Though these offenses require more direct contact than the offense of dissemination, we find that their elements bear the most resemblance to dissemination of child pornography. Based on these similar-conduct crimes, the ranking of level VIII to the dissemination charge here is inappropriate.

An additional *Kenard* factor addresses the severity levels assigned in sentencing other offenders for the same offense. Our review of the sentencing guidelines data provided by the state indicates that from 2000–2003 dissemination charges received an average severity level between IV and V. The highest assignment in this period was level VI and the lowest was level I. In the present case, the district court emphasized that the very large amount of child pornography on appellant's computer distinguished this case from the cases of others convicted of dissemination. But this proposition, on its own, does not alleviate our concern that the district court assignment of level VIII to appellant's dissemination conviction did not meet "the sen-

tencing guidelines' goals of equity and proportionality." *Kenard*, 606 N.W.2d at 444. Of concern, also, is that ranked severity level VIII offenses include arson I, criminal sexual conduct I, II, and III, and criminal vehicular homicide, kidnapping, and manslaughter. Appellant's conduct, while very serious, is not analogous to these level VIII offenses.

Further, we agree with appellant that the very large amount of child pornography discovered on his computer might well have been a fact available to the district court if it wished to identify an aggravating factor supporting an upward departure,[6] but the presence of the very large amount is an inappropriate basis to rely on in establishing a severity level that is not consistent with levels determined in cases of like conduct.

We remand the issue of determination of the severity level for dissemination in order to enable the district court to conduct the more extensive analysis required by *Kenard*, and to compare properly the conduct of appellant and the facts of this case to those in similar cases so that the express purpose of the sentencing guidelines may be fully recognized and followed.

## IV. Dispositional Departure

■ Finally, appellant argues that the district court erred in denying his motion for a dispositional departure because it did not focus on his amenability to treatment and the mitigating factors present in this case. Minn.Stat. § 244.11, subd. 2(b), permits an appellate court to review a sentence imposed or stayed to determine whether the sentence is inconsistent with statutory requirements, unreasonable, inappropriate, excessive, unjustifiably disparate, or not warranted by the findings of

fact issued by the district court. In addition, appellate courts have discretion to modify a sentence in the interests of fairness and uniformity. *State v. Vazquez*, 330 N.W.2d 110, 112 (Minn.1983). But a district court has broad discretion in sentencing criminal defendants, *State v. Law*, 620 N.W.2d 562, 564 (Minn.App.2000), *review denied* (Minn. Dec. 20, 2000), even though it "has no discretion to depart from the sentencing guidelines unless aggravating or mitigating factors are present." *State v. Spain*, 590 N.W.2d 85, 88 (Minn. 1999).

■ A defendant's particular amenability to individualized treatment in a probationary setting will justify departure in the form of a stay of execution of a presumptively executed sentence. *State v. Wright*, 310 N.W.2d 461, 462–63 (Minn. 1981). Amenability depends on numerous factors, including the defendant's age, prior record, remorse, cooperation, attitude while in court, and the support of friends or family. *State v. Trog*, 323 N.W.2d 28, 31 (Minn.1982). The decision whether to depart dispositionally focuses "more on the defendant as an individual and on whether the presumptive sentence would be best for him and for society." *State v. Heywood*, 338 N.W.2d 243, 244 (Minn.1983).

■ A district court may refuse to depart, however, even where mitigating or aggravating factors are present. *See, e.g., State v. Wall*, 343 N.W.2d 22, 25 (Minn. 1984) ("The fact that a mitigating factor was clearly present did not obligate the court to place defendant on probation or impose a shorter term than the presumptive term."); *State v. Back*, 341 N.W.2d 273, 275 (Minn.1983) ("We have indicated in a number of cases that ordinarily we

---

6. We do not address what consequences would have resulted under *Blakely* had such an upward departure based on aggravated circumstances been made. *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

will not interfere with a sentence that falls within the presumptive sentence range even if there are grounds that would justify departure."); *State v. Abeyta,* 336 N.W.2d 264, 265 (Minn.1983) (rejecting defendant's argument "that there were mitigating circumstances present which were so substantial that the trial court on remand erred in refusing to depart dispositionally" and place him on probation).

Appellant urges that he is entitled to the benefit of analysis under the factors set forth in *Trog*, 323 N.W.2d. at 31. He stresses that he (1) is 22 years old, (2) is a college senior with outstanding academic credentials, (3) has no past criminal history, (4) immediately admitted culpability and cooperated with the police investigation, (5) has shown remorse, and (6) has received a large amount of support from family, friends, and professors, which is reflected in the large number of letters that were sent asking the district court for leniency in sentencing appellant.

We are not insensitive to the persuasiveness and strength of these factors. Nor are we insensitive to the very real consequences to be incurred by this bright, promising student, nor to the effect that his criminal behavior will have on what might have been a productive future career. Indeed, had a district court relied on those factors and exercised its discretion to dispositionally depart and place appellant on probation, it is unlikely that a reviewing court would have reversed that decision. But we are also sensitive to the fact that the legislature, in enunciating the public policy of the state, has criminalized appellant's behavior, and rightly so. We must recognize also that the caselaw is clear; although the district court could have applied these mitigating factors, it was not required to do so. It would be a rare case in which a reviewing court would reverse the exercise of discretion by a

district court to either depart dispositionally or to refuse to do so. *State v. Kindem,* 313 N.W.2d 6, 7 (Minn.1981). It is our judgment that this is not that rare case.

In summation, and cognizant of the effect that remand on the dissemination severity-level issue ultimately may have on the issue of dispositional departure, we conclude that the district court was within its discretion when it refused to depart dispositionally and place appellant on probation.

## DECISION

The offense of possession of child pornography is a lesser-included offense of the offense of dissemination of child pornography, but because the possession of child pornography and its dissemination were not part of a single act, we affirm the district court's conclusion that appellant's possession charges do not fit within the statutory protection of Minn.Stat. § 609.04 (2002). We further affirm the district court's conclusion that the multiple-victim exception to Minn.Stat. § 609.035 (2002) applies to possession of multiple computerized images of child pornography. We reverse the district court's application of *Hernandez* to appellant's criminal-history score and, pursuant to Minn. Sent. Guidelines II.B.1.c., we remand to the district court to enable sentencing on the two highest ranking offenses. We reverse the execution of the two sentences for possession of child pornography and remand for appropriate application of the sentencing guidelines. We affirm the district court's assignment of severity ranking for possession of the still images, but reverse on its assignment for movie images and dissemination and remand for reconsideration of an appropriate severity level for dissemination. We affirm the district court's discretionary decision to not grant a dispositional departure.

Affirmed in part, reversed in part, and remanded.