STATE of Minnesota, Respondent,

v.

Orlando C. CLARK, Appellant.

No. C6-91-1519.

Court of Appeals of Minnesota.

June 16, 1992.

Hubert H. Humphrey, III, St. Paul, Michael O. Freeman, Hennepin County Atty., Donna J. Wolfson, Asst. County Atty., Minneapolis, for respondent.

Steven P. Russett, Asst. State Public Defender, St. Paul, for appellant.

Considered and decided by RANDALL, P.J., and KLAPHAKE and HARTEN, JJ.

## OPINION

HARTEN, Judge.

Appellant Orlando C. Clark challenges his convictions of third degree burglary, fleeing a peace officer, driving under the influence of alcohol and driving with a blood alcohol concentration of .10 or more.

Clark contends that he was denied a fair trial because of a trial court ruling that, if he testified, he could be impeached with a prior conviction and because two police officers' testimony allegedly implied Clark had a prior criminal record. Clark also argues that his sentence for the fleeing a peace officer conviction should be vacated because it arose out of the same behavioral incident as his third degree burglary conviction. We affirm in part and reverse in part.

### FACTS

On January 22, 1991, after a high speed chase, Clark was arrested for fleeing a peace officer. He was also charged with burglary in the third degree, fleeing a peace officer, driving under the influence of alcohol and driving with a blood alcohol concentration of .10 or more.

At an omnibus hearing, the trial court ruled that Clark was subject to possible impeachment with several prior convictions if he testified. The matter was tried to a jury. After the state rested, the trial court amended its ruling to allow impeachment evidence of only one of the prior convictions.

The jury heard testimony that at 7:00 p.m. on January 22, 1991, Maple Grove police officers responded to a burglary alarm at a Midas Muffler Shop in Grove Square. When they arrived, the police found the cylinder lock to the door missing. At 7:09 p.m., two women called 911 and reported a possible burglary in progress at a bakery three blocks from the Midas store. They said that the suspect's vehicle was leaving the parking lot with its lights off and gave the dispatcher the car's license number.

Community services officer Weeks was monitoring police calls and heard that someone with a pry bar was breaking into the bakery. Weeks was nearby and saw Clark drive onto 83rd Way. Weeks confirmed the license plate number as reported. Weeks followed Clark who was driving at normal speeds.

Police officer Strauch, driving a marked squad, overtook Clark and Weeks as they drove on 83rd Way. As Strauch drove alongside Clark's car, he saw Clark duck. Strauch pulled in behind Clark and activated his red lights and siren. Clark entered I-94 and accelerated to 90 mph, Strauch in pursuit.

After an extended high speed chase, Clark lost control of his car and spun off into the ditch. Clark got out of the car and fled. Strauch chased Clark across the freeway, over a chain-link fence and into a motel parking lot where Clark was stopped and arrested. He appeared intoxicated. He was read his Miranda rights and searched. The police found money in Clark's pockets but left it uncounted.

Strauch took Clark to the hospital for treatment of cuts. Strauch told Clark that he had been arrested for fleeing a peace officer. Clark replied that he had fled because he had been drinking and did not want to lose his license again for driving while intoxicated. He claimed that he had done nothing else wrong.

Clark told Strauch some money had fallen out of his pockets in the squad car. Strauch found $98. Strauch also inventoried the money in Clark's pockets, which totaled $496.95. Another dollar bill was found on the floor of Clark's car. A total of $595.95 had been in Clark's possession.

Clark was read the implied consent law. He agreed to a blood test, which showed an alcohol concentration of .132 percent.

Clark's car was impounded and searched. A screwdriver was found on the driver's seat. A tire iron, two bottles of brandy, the dollar bill and a vice grip with a lock cylinder in its jaws were on the floor near the driver's seat. A pair of gloves was on the passenger's seat.

About $91 was missing from the Midas store. The manager's key to the Midas store fit the lock cylinder found in Clark's car. About $526 was missing from the bakery.

Clark did not testify at trial. He asserts that he chose not to testify solely because of the trial court's ruling on use of his prior conviction for impeachment. However, Clark had also opined that the state

had not met its burden of proof. Additionally, his attorney told the trial court at sentencing that Clark had not testified because his memory had been impaired by alcohol.

At trial, Clark's attorney conceded that Clark had been driving while intoxicated and had fled the police officer but maintained he did not commit either burglary. Clark claimed that he lawfully possessed all the cash found in his possession. He produced evidence allegedly showing the source of all but $97 found in his possession. Clark claimed that the real burglar panicked and tossed the vice grip holding the lock from the Midas store onto the front seat of Clark's car while Clark was urinating nearby.

The jury found Clark not guilty of the bakery burglary but guilty of burglary in the third degree of the Midas store. The jury also found Clark guilty of fleeing a peace officer, driving while under the influence of alcohol and driving with a blood alcohol concentration of .10 or more in violation of Minn.Stat. § 169.121, subd. 1(a) and (d) (1990).

The trial court sentenced Clark to a stayed prison term of 44 months, 5 years probation, a $200 fine and restitution for burglary in the third degree, a consecutive 365–day jail term for fleeing a peace officer, and two concurrent 30–day jail terms for the two counts of driving under the influence of alcohol and driving with a blood alcohol concentration of .10. Later, at Clark's request, the trial court resentenced him to an executed prison term of 44 months for burglary in the third degree, a concurrent 90–day jail term for fleeing a peace officer and a concurrent 90–day jail term for driving under the influence of alcohol.

## ISSUES

1. Did the trial court err in ruling that Clark could be impeached with a prior conviction?

2. Was Clark denied a fair trial by two police officers' testimony that allegedly implied Clark had a criminal record?

3. Did the trial court err in convicting Clark of both driving under the influence of alcohol and driving with a blood alcohol concentration of .10?

4. Was Clark sentenced for driving with a blood alcohol concentration of .10?

5. Did the trial court err in sentencing Clark for both fleeing a peace officer and driving with a blood alcohol concentration of .10?

## ANALYSIS

■ 1. Clark asserts that he was denied a fair trial by the trial court ruling that, if he testified, he could be impeached with a prior 1990 conviction of attempted theft over $2,500. *See* Minn.R.Evid. 609(a)(1) (evidence of felony criminal conviction not involving dishonesty or false statement only admissible for impeachment if its probative value outweighs its prejudicial effect). At trial, Clark conceded guilt on the DWI and fleeing a peace officer charges; therefore, we only address the effect of the trial court ruling on the burglary conviction.

The prior conviction of attempted theft had impeachment value. *See State v. Ward,* 349 N.W.2d 294, 297 (Minn.App. 1984) (a prior conviction is probative of credibility). Being recent, it also was relevant. While both the prior and charged crimes were property crimes, they were not so similar that it was likely the jury would make substantive use of the evidence. *State v. Bettin,* 295 N.W.2d 542, 546 (Minn. 1980). Without testifying, Clark was able to present his defense that he was the innocent victim of circumstances. Had he testified, his credibility would have been central. We are also mindful that Clark did not refrain from testifying solely because of the impeachment ruling. After considering the factors set forth in *State v. Jones,* 271 N.W.2d 534, 538 (Minn.1978), we conclude the trial court did not abuse its discretion. *See State v. Brouillette,* 286 N.W.2d 702, 707 (Minn.1979) (evidentiary rulings are sustained absent clear abuse of discretion).

■ 2. Clark contends that he was denied a fair trial by two police officers' testimony which allegedly implied that he had a prior criminal record. The constitutional right to a fair criminal trial does not guarantee a perfect trial. *State v. Billington,* 241 Minn. 418, 427, 63 N.W.2d 387, 392–93 (1954). Where, as here, a reference to a defendant's prior record is of a "passing nature," or the evidence of guilt is "overwhelming," a new trial is not warranted because it is extremely unlikely "that the evidence in question played a significant role in persuading the jury to convict." *State v. Haglund,* 267 N.W.2d 503, 506 (Minn.1978).

■ The first alleged error occurred during direct examination of an arresting officer. The officer said that a Plymouth police officer at the scene recognized Clark "from a past incident." We agree with the state that the challenged phrase was only a passing remark that could have described many types of interactions between Clark and the police.

■ The second alleged error occurred during the cross-examination of Strauch. Strauch testified that, when he handcuffed Clark, he placed his knee in Clark's back in case Clark decided to start fighting. The following colloquy then ensued:

Q: But he didn't do that?

A: Not this time, no.

Q: Not this time, is that what you said?

A: Not when I was handcuffing him, no.

We find this passing reference benign; it did not necessarily suggest that Clark had a prior record. As to both alleged errors, we note that there was strong evidence against Clark.

■ 3. The trial court committed plain error in convicting Clark of both driving under the influence of alcohol and driving with a blood alcohol concentration of .10. A defendant does not waive relief from multiple sentences or convictions arising from the same behavioral incident by failing to raise the issues at the time of sentencing. *Ture v. State,* 353 N.W.2d 518, 523 (Minn.1984). Although the issues are

not waived, the supreme court has indicated it

might decline to decide issues concerning the application of either section 609.035 or 609.04 unless the defendant first presented it to the trial court for decision.

*Id.* (citing *State v. Kemp,* 305 N.W.2d 322, 326 (Minn.1981)). The expressed intent is to avoid appeal and the necessity of an appellate court deciding the issues. *Ture,* 353 N.W.2d at 523. Nevertheless, the supreme court has acknowledged that it had addressed the issues in a number of appeals subsequent to *Kemp* despite the defendants' failure to raise them in the trial court. *State v. Folley,* 438 N.W.2d 372, 373 (Minn.1989). In reviewing this court's decision in *Folley,* the supreme court also approved this court addressing the application of section 609.04 although it had not been raised in the trial court. *Id.*

■ Whether the trial court erred in convicting Clark of both driving under the influence of alcohol and driving with a blood alcohol concentration of .10 was not raised by Clark in the trial court or on appeal. Nonetheless, it is plain that convicting Clark of both crimes is prohibited by Minn.Stat. § 609.04 (1990):

Upon prosecution for a crime, the actor may be convicted of either the crime charged or an included offense, but not both. An included offense may be any of the following:

(1) A lesser degree of the same crime; or

\* \* \* \* \* \*

(4) A crime necessarily proved if the crime charged were proved.

Driving under the influence of alcohol and driving with a blood alcohol concentration of .10 do not necessarily rest upon the same proof and are not lesser-included offenses of each other. Nonetheless, section 609.04 forbids "multiple convictions under different sections of a criminal statute for acts committed during a single behavioral incident." *State v. Jackson,* 363 N.W.2d 758, 760 (Minn.1985).

Minn.Stat. § 169.121, subd. (1)(a) and (d) are different subsections of the same statute. Here they applied to one behavioral incident. One of the convictions must be vacated. We vacate Clark's conviction of driving with a blood alcohol concentration of .10. The trial court sentenced Clark on the driving under the influence of alcohol conviction.

4. Clark maintains that he was sentenced for driving with a blood alcohol concentration of .10. A review of the resentencing transcript, however, does not support that assertion. In any event, we have ordered the conviction vacated.

5. Clark argues that his sentence for fleeing a peace officer should be vacated because it arose out of the same behavioral incident which led to his third degree burglary conviction. The state counters that the fleeing conviction arose out of the same behavioral incident as the driving under the influence of alcohol conviction. Clark's argument that his flight was motivated by his desire not to be apprehended for the burglary is inconsistent with his claim at trial and on appeal that he fled because he knew he was intoxicated and did not want to lose his license again.

Minn.Stat. § 609.035 (1990) provides that, with certain exceptions inapplicable here,

if a person's conduct constitutes more than one offense under the laws of this state, the person may be punished for only one of the offenses.

When the two crimes are intentional, the focus is on such elements as time and place and whether the motivation for the conduct was the same criminal objective. *State v. Gibson*, 478 N.W.2d 496, 497 (Minn.1991). Multiple sentences may not be used if the second offense was committed "substantially contemporaneously" so as to "avoid apprehension for the first offense." *Id.* The state is burdened to show divisibility of conduct. *State v. McAdoo*, 330 N.W.2d 104, 109 (Minn.1983).

Here, the state takes the position that fleeing a peace officer and driving under the influence of alcohol convictions are indivisible. For that reason, we distinguish the holding of *State v. Anderson*, 468 N.W.2d 345, 346 (Minn.App.1991) (uninterrupted time period in which error in judgment in deciding to drive while under the influence of alcohol and in deciding to flee a peace officer occurred not sufficient to manifest indivisible conduct). Moreover, because of the later decision of the supreme court in *Gibson*, the continued vitality of *Anderson* is questionable.

When reviewing the trial court's determination on whether sentences are barred by section 609.035, we examine the record. *State v. Nordby*, 448 N.W.2d 878, 880 (Minn.App.1989) (citing *Bixby v. State*, 344 N.W.2d 390, 394 (Minn.1984)). Our review of this record convinces us that fleeing a peace officer and driving while under the influence of alcohol convictions were part of the same behavioral incident. We vacate the sentence for driving while under the influence of alcohol.

## DECISION

Clark is not entitled to a new trial based on the challenged evidentiary rulings. Clark's convictions of burglary in the third degree, fleeing a peace officer, and driving while under the influence of alcohol are affirmed. His conviction of driving with a blood alcohol concentration of .10 or more is vacated. Clark's sentences for burglary in the third degree and fleeing a peace officer are affirmed. His sentence for driving under the influence of alcohol is vacated.

Affirmed in part and reversed in part.