*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A14-1363**

State of Minnesota,
Respondent,

vs.

Arthur Charles Huffman,
Appellant.

**Filed April 20, 2015**
**Affirmed in part, reversed in part, and remanded**
**Smith, Judge**

Wabasha County District Court
File No. 79-CR-14-131

Lori Swanson, Attorney General, St. Paul, Minnesota; and

James C. Nordstrom, Wabasha County Attorney, Wabasha, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sara J. Euteneuer, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Smith, Presiding Judge; Rodenberg, Judge; and Chutich, Judge.

**U N P U B L I S H E D   O P I N I O N**

**SMITH**, Judge

We affirm appellant's convictions of first-degree criminal sexual conduct, domestic assault by strangulation, and terroristic threats because the district court did not err by admitting evidence regarding appellant's incarcerations, the prosecutor did not

commit prejudicial misconduct during her closing argument, and appellant's pro se arguments regarding errors at his trial lack merit. But we reverse and remand for the district court to correct the erroneous warrant of commitment and resentence appellant based on the correct criminal history scores and the Minnesota Sentencing Guidelines.

**FACTS**

Appellant Arthur Charles Huffman met M.J. over Memorial Day weekend in 2013, and the couple soon developed a sexual relationship. In fall 2013, Huffman began serving a jail sentence in New Hampshire. He and M.J. called each other and sent letters back and forth until his release in February 2014.

On February 10, 2014, Huffman and M.J. went grocery shopping and stopped at a bar. According to M.J., she drank three beers, but Huffman drank "quite a bit." They were at the bar from 1:00 to 7:00 p.m., and Huffman became upset with M.J. as he drank. As she was driving them home, M.J. became concerned that Huffman was going to hit her.

M.J. testified that, as she was putting away the groceries, Huffman grabbed her by the hair and told her to get in the bedroom. Huffman undressed, and M.J. took off her pants and underwear. M.J. explained that she "thought it would be easier to have sex and he would pass out, and it would be over with." During vaginal intercourse, Huffman started slapping her "continually," which lasted a few minutes. He then pulled M.J.'s head back by her hair, spit in her face, hit her, and bit her face. M.J. told Huffman to stop several times. Huffman then forced M.J. to perform oral sex on him and said that if she hurt him, he would "make it worse for [her]." After about one minute, Huffman punched

2

M.J. in the back of the head and ribs and started strangling her. M.J. tried to yell that she could not breathe and thought she was going to die. She punched Huffman until they fell off the bed and he hit the nightstand. M.J. ran to the kitchen, but Huffman followed her, grabbed her hair, and pushed her back into the bedroom.

According to M.J., Huffman then told her to get on her knees. Huffman began having vaginal intercourse with M.J., but thought it was anal intercourse. After discovering this, he told M.J. he was "going to hurt [her] so bad." He pulled her head back and put his fingers in her rectum. Huffman then shoved his fingers in M.J.'s mouth and "started performing anal sex on [her]." M.J. kicked her feet until Huffman lost his balance and fell off the bed. M.J. grabbed a coat and ran outside into the snow. She flagged down a passing car and used her neighbor's cell phone to call police.

Huffman was charged with eight counts of first-degree criminal sexual conduct, one count of domestic assault by strangulation, and three counts of making terroristic threats. Following testimony in the jury trial, the state dismissed four first-degree criminal-sexual-conduct charges and two terroristic-threats charges. The jury then found Huffman guilty of three counts of first-degree criminal sexual conduct, domestic assault by strangulation, and making terroristic threats, and not guilty of the remaining charge of first-degree criminal sexual conduct. The jury also found that Huffman used force and coercion in the commission of the three criminal-sexual-conduct offenses.

At sentencing, the district court imposed 360 months in prison on one charge of first-degree criminal sexual conduct and concurrent sentences of 33 months each on the domestic-assault and terroristic-threats charges.

3

**D E C I S I O N**

**I.**

Huffman first argues that the district court erred by allowing the admission of evidence that he was incarcerated both before and after the charged offenses. "Evidentiary rulings rest within the sound discretion of the [district] court and will not be reversed absent a clear abuse of discretion." *State v. Amos*, 658 N.W.2d 201, 203 (Minn. 2003). The erroneous admission of evidence does not require reversal unless the error "substantially influence[d] the jury's decision." *State v. Nunn*, 561 N.W.2d 902, 907 (Minn. 1997).

While references to a defendant's prior incarceration "can be unfairly prejudicial," there is no "general rule that it is prejudicial for the jury to learn that a defendant is in jail for the crime for which he or she is on trial." *State v. Manthey*, 711 N.W.2d 498, 506 (Minn. 2006). The evidence at trial included phone calls and text messages from Huffman to M.J. following his arrest, during which Huffman appeared to blame M.J. and to suggest that he was innocent "because they record these calls." The references to Huffman's location during the calls and texts only confirmed jurors' understanding of the "standard law enforcement practice" of incarcerating a defendant after filing charges against him. *See id.* at 506-07 ("Generally, jurors' knowledge that a defendant is in custody pending the outcome of a . . . trial is likely to have been seen for just what it is— standard law enforcement practice." (quotation omitted)); *see also State v. Anderson*, 391 N.W.2d 527, 532 (Minn. App. 1986) (stating that a jury could know that a defendant "would remain in custody for at least a few days after arrest for three aggravated

4

robberies" and declining to find reversible error for two inadvertent references to the defendant's post-offense incarceration). As the district court concluded, Huffman's post-offense incarceration was "pretty obvious from the context." Because the references to Huffman's post-offense incarceration were obvious to the jury and relevant to its understanding of Huffman's phone calls and text messages, the district court did not abuse its discretion in admitting the challenged evidence.

During M.J.'s direct examination, the prosecutor did not mention Huffman's prior incarceration, but referred only to a separation between fall 2013 and February 2014. The prosecutor questioned M.J. about the content of three letters she wrote to Huffman during this separation. On cross-examination, Huffman's attorney attempted to introduce another letter from M.J. to Huffman "for purposes of impeachment." This letter contained an explicit story with references to biting and ripping off clothing during sex. The district court allowed Huffman's attorney to introduce the letter but explained that "you're opening the door to allowing her to explain the circumstances and the meaning of it." On redirect, M.J. stated that she sent the letter to Huffman while he was in jail. The district court overruled Huffman's objection to this statement because M.J. was entitled to explain that she wrote the letter at Huffman's request and because the fact that Huffman was in jail was "relevant and material" to M.J.'s explanation.

M.J.'s statement that she sent the letter to Huffman while he was in jail was generally inadmissible. *See Manthey*, 711 N.W.2d at 506 (explaining that references to a defendant's prior incarceration "can be unfairly prejudicial"). But by introducing M.J.'s explicit letter, Huffman opened the door to M.J.'s explanation. "Opening the door occurs

5

when one party by introducing certain material creates in the opponent a right to respond with material that would otherwise have been inadmissible." *State v. Valtierra*, 718 N.W.2d 425, 436 (Minn. 2006) (quotations omitted). Huffman introduced the letter to bolster his argument that M.J. consented to the sexual activities. M.J.'s explanations for the letter were relevant and provided context for the couple's sexual relationship. *See* Minn. R. Evid. 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). Because Huffman opened the door and gave M.J. the right to explain the letter's context, the district court did not abuse its discretion in allowing reference to Huffman's prior incarceration.

The references to Huffman's incarcerations did not influence the jury's decision. When "a reference to a defendant's prior record is of a passing nature, or the evidence of guilt is overwhelming, a new trial is not warranted because it is extremely unlikely that the evidence in question played a significant role in persuading the jury to convict." *State v. Clark*, 486 N.W.2d 166, 170 (Minn. App. 1992) (quotations omitted). M.J. provided extensive testimony about her relationship with Huffman and the events of February 10, 2014. Because the other evidence of Huffman's guilt was strong, we cannot conclude that the references to Huffman's incarcerations persuaded the jury to convict. *See id.* at 170-71 (declining to order a new trial for two brief references to the defendant's prior record when the other evidence of guilt was strong).

Huffman next challenges three statements in the prosecutor's closing argument.

*Statement One:*

In her closing argument, the prosecutor stated:

> Is it consent freely given when at the end of this rough, adventurous sex, the victim feels the need to run from the house naked in February holding a coat, a spring coat no less? I would suggest to you, ladies and gentlemen, that that is not consent freely given, and you would have to be on a different planet to think it was.

Huffman's attorney objected to this statement, and the district court overruled the objection, explaining that the statement involved permissible "hyperbole."

When analyzing objected-to prosecutorial misconduct, we apply a harmless error test that "varies based on the severity of the misconduct." *State v. Wren*, 738 N.W.2d 378, 389 (Minn. 2007). We "will reverse only if the misconduct, when considered in light of the whole trial, impaired the defendant's right to a fair trial." *State v. Powers*, 654 N.W.2d 667, 678 (Minn. 2003). "If the misconduct was serious, the misconduct is harmless beyond a reasonable doubt if the verdict rendered was surely unattributable to the error. For less serious misconduct, the standard is whether the misconduct likely played a substantial part in influencing the jury to convict." *Id.* (quotations and citations omitted).

Huffman is correct that the prosecutor's statement "was directed at the heart of the defense—whether M.J. consented." We conclude that the prosecutor improperly disparaged the defense with her statement that the jury "would have to be on a different planet" to agree with the defense that M.J. consented. *See State v. Griese*, 565 N.W.2d

419, 427 (Minn. 1997) (stating that "it is improper to disparage the defense in closing arguments"). But we also conclude that the prosecutor's misconduct was not serious and did not influence the jury's decision. *See Powers*, 654 N.W.2d at 678. M.J.'s testimony provided ample evidence of Huffman's guilt, and a review of the prosecutor's entire closing argument does not reveal additional misconduct. *See id.* (explaining that we consider the closing argument as a whole and review prosecutorial misconduct "in light of the whole trial"). Huffman is not entitled to a new trial based on the prosecutor's one disparaging statement.

*Statement Two:*

In rebuttal, the prosecutor challenged the defense's "act of desperation" in pointing out in closing that the doctor who examined M.J. and testified at trial was acquainted with the prosecutor's husband. She called this "[s]omething else to be thrown at the wall to distract you." The defense attorney did not immediately object, but requested surrebuttal on the basis that the prosecutor "belittl[ed] the defense." The district court denied surrebuttal.

Contrary to Huffman's contention on appeal, the prosecutor was not commenting on "the evidence presented by Huffman." Huffman's attorney attacked the doctor's findings in his closing, in part based on the doctor's acquaintance with the prosecutor and her husband. Rather than belittling the defense, the prosecutor was responding to the defense's insinuations. This statement did not amount to prosecutorial misconduct and did not influence the jury's decision. *See id.*

*Statement Three:*

Huffman also challenges the following section of the prosecutor's rebuttal:

> There seems to be a portion of [defense counsel's] closing argument where he almost seems to suggest that he wants you to abandon common sense and seems to tell you that common sense is not a substitute for proof beyond a reasonable doubt. No, common sense is just part of the instruction. It's just part of all that language. So you don't abandon your common sense. You use your common sense. That's part of the instruction for proof beyond a reasonable doubt.

Huffman's attorney did not object.

When analyzing unobjected-to prosecutorial misconduct, "we apply a modified plain error test." *Wren*, 738 N.W.2d at 389. We reverse "only if there is (1) error, (2) that is plain, and (3) the error affects the defendant's substantial rights." *State v. Hill*, 801 N.W.2d 646, 654 (Minn. 2011). If the defendant "demonstrates that the prosecutor's conduct constitutes an error that is plain," the burden shifts to the state to show that the error did not affect the defendant's substantial rights. *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006).

Huffman has not met his burden to demonstrate an error, much less a plain error. *See State v. Starkey*, 516 N.W.2d 918, 927 (Minn. 1994) (finding no error when a prosecutor stated that the defense would "divert your attention from the real facts, the real logic and the real common sense of this case"). This challenged statement did not improperly disparage the defense, but simply urged the jury to use common sense. *See id.* (stating that a prosecutor properly urged jurors to use common sense in anticipation of a defense argument). In addition, the statement mirrored the district court's instruction to weigh witness testimonies based on the jury's "own experience, good judgment and common sense."

9

**III.**

Huffman next raises several issues regarding his convictions and sentencing. We review sentencing challenges based on legal issues de novo. *State v. DeRosier*, 719 N.W.2d 900, 903 (Minn. 2006). "[A]n appellant does not waive claims of multiple convictions or sentences by failing to raise the issue at the time of sentencing." *Spann v. State*, 740 N.W.2d 570, 573 (Minn. 2007).

First, Huffman argues that the district court erred under Minn. Stat. § 609.04 (2012) by entering convictions on all three first-degree criminal-sexual-conduct charges. Section 609.04 "prevent[s] the state from convicting a defendant twice of the same offense or of a greater and a lesser-included offense on the basis of the same act or course of conduct." *State v. Dudrey*, 330 N.W.2d 719, 721 (Minn. 1983). In *Dudrey*, the supreme court held that a defendant charged with multiple counts of criminal sexual conduct based on different types of penetration during the same behavioral incident may be convicted of only one count. *Id.* But the different types of penetration can "be considered in making the determination whether to depart from the presumptive sentence." *Id.* at 722. At sentencing, the district court correctly determined that, under *Dudrey*, it could only sentence Huffman on one count of first-degree criminal sexual conduct. *See id.* at 721.

But the warrant of commitment states that Huffman was convicted of three counts of criminal sexual conduct. A written judgment of conviction provides "conclusive evidence of whether an offense has been formally adjudicated." *Spann*, 740 N.W.2d at 573 (quotation omitted). Because the warrant of commitment shows that Huffman was

10

convicted of three counts of first-degree criminal sexual conduct and because two convictions were improper under *Dudrey*, we reverse and remand for the district court to vacate two of Huffman's first-degree criminal-sexual-conduct convictions.

Second, Huffman argues that the district court erred under Minn. Stat. § 609.035 (2012) by entering convictions on both the domestic-assault and terroristic-threats charges. In general, "if a person's conduct constitutes more than one offense under the laws of this state, the person may be punished for only one of the offenses." Minn. Stat. § 609.035, subd. 1. But section 609.035 contains an exception where a conviction of criminal sexual conduct committed "with force or violence is not a bar to conviction of or punishment for any other crime committed by the defendant as part of the same conduct." *Id.*, subd. 6. Here, the jury concluded that Huffman committed criminal sexual conduct with force and coercion, so the exception applies and allows additional convictions.

Huffman argues that the exception under subdivision 6 permits his conviction for only one additional crime. We disagree. Subdivision 6 allows an additional conviction for "*any* other crime committed by the defendant." *Id.* (emphasis added). It does not allow conviction for "*another* crime." In addition, the statute explains the effect of consecutive sentences when an offender "is punished for *more than one* crime." *Id.* (emphasis added). This language does not suggest that a district court can convict an offender of only one crime in addition to criminal sexual conduct. *See State v. Williams*, 771 N.W.2d 514, 520 (Minn. 2009) ("[I]f a defendant commits one of these offenses [in the statutory exceptions], he or she may be convicted and sentenced for other *offenses* that arise out of the same behavioral incident." (emphasis added)). Because the plain

11

language of section 609.035, subdivision 6 allows conviction for other crimes committed during the same conduct as criminal sexual conduct, the district court did not err by convicting Huffman of both domestic abuse by strangulation and terroristic threats.

Third, Huffman challenges the criminal history scores used to calculate his domestic-abuse and terroristic-threats sentences. He does not challenge his criminal history score for the remaining criminal-sexual-conduct conviction. "[W]e will not reverse the district court's determination of a defendant's criminal history score absent an abuse of discretion." *State v. Stillday*, 646 N.W.2d 557, 561 (Minn. App. 2002), *review denied* (Minn. Aug. 20, 2002). But Huffman is correct that reversal and remand is required because the district court improperly increased Huffman's criminal history scores by adding points for the two criminal-sexual-conduct convictions that must be vacated. "In order for a felony conviction to be included in a defendant's criminal-history score, the sentence for that conviction must have been stayed or imposed before the current sentencing." *Williams*, 771 N.W.2d at 521 (quotation omitted). The district court erred by increasing Huffman's criminal history score based on two charges for which the district court stated that it was not imposing conviction.

"[W]hen a defendant is sentenced for multiple offenses on the same day, a conviction for which the defendant is first sentenced is added to his or her criminal-history score for another offense for which he or she is also sentenced." *Id.* Huffman had one criminal history point before being sentenced for first-degree criminal sexual conduct. The first-degree criminal-sexual-conduct conviction added three criminal history points. *See* Minn. Sent. Guidelines 2.B.1.b, 4.B (2012) (showing that an A-level

offense on the sex-offender grid is three points and that first-degree criminal sexual conduct falls in level A). When he was sentenced for domestic assault by strangulation, Huffman should have had four criminal history points, rather than seven. The domestic-assault conviction then added one criminal history point to Huffman's total. *See* Minn. Sent. Guidelines 2.B.1.a (2012) (showing that a severity-level four offense adds one point). Huffman therefore should have had five points for the terroristic-threats sentence, rather than eight.

Given the errors in Huffman's criminal history scores, we reverse and remand Huffman's sentences for domestic assault and terroristic threats for the district court to resentence Huffman based on the correct criminal history scores.

Finally, Huffman argues in his pro se supplemental brief that his aggravated sentence for the remaining first-degree criminal-sexual-conduct conviction violated *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531 (2004). Under *Blakely*, "any fact that is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted to by the defendant or proved to a jury beyond a reasonable doubt." *State v. Osborne*, 715 N.W.2d 436, 440 (Minn. 2006).

Before sentencing, the state moved the district court to order consecutive sentences for the three counts of first-degree criminal sexual conduct, and requested a sentence of 374 months in prison. But the maximum sentence for first-degree criminal sexual conduct is 30 years (or 360 months). Minn. Stat. § 609.342, subd. 2(a) (2012). At the sentencing hearing, the prosecutor explained that, under the presentence investigation,

the maximum sentence was 360 months, and that she had requested 374 months because she "forgot that the points would accumulate through separate worksheets." Based on this statement, the prosecutor seems not to have understood that she was requesting an aggravated sentence. *See* Minn. Sent. Guidelines 4.B (showing that the presumed sentence for first-degree criminal sexual conduct with one criminal history point is 156 months with a range from 144 to 187 months). As a result, the prosecutor failed to provide written notice of an intent to seek an aggravated sentence. *See* Minn. R. Crim. P. 7.03 (requiring written notice at least seven days before the omnibus hearing). We agree with Huffman that this lack of notice infringed his right to request or waive a jury trial on sentencing factors. *See Osborne*, 715 N.W.2d at 443 (explaining in a case pending when *Blakely* was decided that the defendant was not advised of his right to have a jury trial on sentencing factors and so did not waive that right).

The district court determined that it could impose an upward departure because the jury found that Huffman committed multiple forms of sexual penetration against M.J. "[T]he fact that the defendant has penetrated a victim in two or more different ways as part of the same behavioral incident can . . . be considered in making the determination whether to depart from the presumptive sentence." *Dudrey*, 330 N.W.2d at 721-22. But "[a] district court must order the presumptive sentence provided by the sentencing guidelines unless there are 'substantial and compelling circumstances' to warrant an upward departure." *State v. Grampre*, 766 N.W.2d 347, 350 (Minn. App. 2009) (quoting Minn. Sent. Guidelines II.D), *review denied* (Minn. Aug. 26, 2009). The district court made no finding that there were substantial and compelling circumstances showing that

14

Huffman's conduct was significantly more serious than the conduct typically involved in first-degree criminal sexual conduct. In addition, the district court did not find that there were "severe aggravating circumstances," but imposed a "greater-than-double departure from the presumptive sentence." *See State v. Shattuck*, 704 N.W.2d 131, 140 (Minn. 2005) ("Only in cases of severe aggravating circumstances may the district court impose a greater-than-double departure from the presumptive sentence; in such cases the only absolute limit on duration is the maximum provided in the statute defining the offense." (quotation omitted)).

Because Huffman received no notice of the state's intent to seek an aggravated sentence and because the district court imposed the maximum statutory sentence, greater than double the presumptive sentence, without finding "severe aggravating circumstances," *see id.*, we reverse Huffman's aggravated sentence for first-degree criminal sexual conduct and remand for resentencing.

**IV.**

Huffman raises several additional arguments in his pro se supplemental brief.

*Ineffective Assistance of Counsel:*

Huffman argues that his trial attorneys were ineffective. But Huffman is incorrect that his attorneys failed to argue that he was too intoxicated to commit the charged offenses. Huffman's attorneys disclosed their intent to introduce an intoxication defense and discussed Huffman's intoxication extensively during closing argument. Because Huffman's attorneys introduced an intoxication defense, as Huffman wanted, there is no evidence that their performance fell below an objective standard of reasonableness. *See*

15

*State v. Rhodes*, 657 N.W.2d 823, 842 (Minn. 2003) ("To prevail on such a claim, an appellant must demonstrate that counsel's performance fell below an objective standard of reasonableness . . . ." (quotation omitted)).

In making his other ineffective-assistance arguments, Huffman cites facts we cannot review because they are not in the record. *See State v. Alvarez*, 820 N.W.2d 601, 626 (Minn. App. 2012) ("[A]n ineffective-assistance-of-counsel claim should typically be raised by a postconviction petition for relief."), *aff'd sub. nom. State v. Castillo-Alvarez*, 836 N.W.2d 527 (Minn. 2013). Because there is no record evidence regarding Huffman's communications with his attorneys, we decline to consider Huffman's other arguments. We also decline to consider Huffman's arguments because they challenge trial strategy. *See Andersen v. State*, 830 N.W.2d 1, 13 (Minn. 2013) (explaining that appellate courts do not review claims of ineffective assistance of counsel that are based on trial strategy).

*DNA Evidence:*

Huffman challenges the district court's exclusion of DNA evidence. The state moved to exclude the DNA evidence, and the district court granted the motion because Huffman was raising a consent defense and the evidence's prejudice would outweigh its probative value. Under Minnesota's rape-shield law, only evidence of the victim's previous common scheme or plan of similar sexual conduct and evidence of previous sexual conduct with the accused are admissible when consent of the victim is a defense. Minn. Stat. § 609.347, subd. 3 (2012). The excluded DNA evidence in this case falls under neither of those exceptions. As a result, the district court did not abuse its

discretion in excluding the DNA evidence. *See Amos*, 658 N.W.2d at 203 ("Evidentiary rulings rest within the sound discretion of the [district] court and will not be reversed absent a clear abuse of discretion.").

*Prosecutorial Misconduct:*

In addition to the prosecutorial-misconduct issues raised by his appellate attorney, Huffman argues that the prosecutor improperly aligned herself with the jury during jury selection. During voir dire, the prosecutor asked one potential juror whether he thought he could be prosecuted for burglarizing a house that was left unlocked. The potential juror responded, "[h]e just better hope that he's not there when I get home," and the prosecutor replied that the man and her husband "would get along really well." The man was then selected for the jury. Because Huffman does not cite legal authority or explain how this exchange prejudiced him, we decline to consider this issue. *See State v. Bartylla*, 755 N.W.2d 8, 22 (Minn. 2008) ("We will not consider pro se claims on appeal that are unsupported by either arguments or citations to legal authority.").

Huffman also argues that the prosecutor improperly referred to evidence of blood on the bed sheets. But we can find no reference to blood in the prosecutor's opening statement and no evidence that the issue came up "throughout the course of the trial," as Huffman suggests. There is also no record evidence that Huffman requested analysis of a blood sample. Given the record and the fact that Huffman did not object to the prosecutor's statements at trial, Huffman has not met his burden to demonstrate a plain error. *See Ramey*, 721 N.W.2d at 302.

17

*Trial Issues and Sequestration:*

Finally, Huffman challenges the timing and venue of his trial. To the extent that Huffman challenges the actions of his trial attorneys, we decline to consider this issue as a matter of trial strategy. *See Andersen*, 830 N.W.2d at 13. We also note that there is no record evidence of defense counsel asking Huffman whether he had additional questions for M.J., as Huffman alleges.

Huffman also challenges the district court's denial of his motion to sequester the jury. The district court denied Huffman's motion for sequestration because there had only been one news article about the case in one local newspaper three weeks before the trial and because the local papers only published once a week so they were unlikely to print any editions until after the trial had ended. The district court must only order sequestration "if the case is of such notoriety or the issues are of such a nature that, in the absence of sequestration, highly prejudicial matters are likely to come to the jurors' attention." Minn. R. Crim. P. 26.03, subd. 5(2). Huffman identifies no facts that suggest the case was notorious or that he was prejudiced by the lack of sequestration. *See State v. Anderson*, 379 N.W.2d 70, 81 (Minn. 1985) (explaining under a previous version of rule 26.03 that lack of sequestration "does not raise a presumption of prejudice" and a defendant must show prejudice in the form of private communications, contacts, or other suspicious circumstances). Given the record, we conclude that the district court did not err by determining that the case was not of such notoriety that sequestration was required.

**Affirmed in part, reversed in part, and remanded.**

18