*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0870**

State of Minnesota,
Respondent,

vs.

Suclah Clarke Sibou,
Appellant.

**Filed May 4, 2015
Affirmed
Peterson, Judge**

Jackson County District Court
File No. 32-CR-11-197

Lori Swanson, Attorney General, Angela Behrens, Assistant Attorney General, St. Paul, Minnesota; and

Sherry E. Haley, Acting Jackson County Attorney, Jackson, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Andrea Barts, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Worke, Presiding Judge; Peterson, Judge; and Hooten, Judge.

## UNPUBLISHED OPINION

**PETERSON**, Judge

        In this appeal from convictions of second- and third-degree controlled-substance crime, appellant argues that he was denied a public trial and a fair trial. We affirm.

**FACTS**

During controlled buys, appellant Suclah Sibou sold 2.7 grams of methamphetamine to a police informant on October 10, 2009, and 1.5 grams of methamphetamine to a police informant on December 4, 2009. Appellant was charged with one count of second-degree controlled-substance crime and two counts of third-degree controlled-substance crime. At trial, witnesses for the state included three law-enforcement officers who arranged or observed the controlled buys, a forensic scientist, the informant, and the informant's adult daughter, who participated in the first controlled buy. The jury also heard audio recordings of both controlled buys. Appellant did not testify at trial.

*Public Trial*

On the second day of trial, defense counsel told the district court that, on the previous day, a bailiff had prevented defense counsel's wife and her friend from entering the courtroom "at approximately 9:00 a.m." The court noted that voir dire would not have started yet at 9:00 a.m. and told defense counsel that it needed "affidavits from your wife about exactly when she came and from what she was told from the Bailiffs."

Instead of submitting an affidavit from his wife, defense counsel submitted affidavits from bailiffs M.P. and P.J. and moved for a mistrial based on the fact that appellant's "right to a public trial was violated by the Bailiffs not allowing people into the courtroom." M.P.'s affidavit states:

> On June 26, 2013, mid morning, 2 females approached the court room. I advised them we were still in the process of jury selection and it would be a couple hours. I suggested

2

they could come back, wait in hallway or whatever as it would be a while just sitting. They walked to benches directly outside of Court Admin office.

P.J.'s affidavit states:

On Wed June 26, 2013 I [P.J.] was working for the Jackson Co. Court system when two (2) Asian females came up to the 3rd floor asking about today's court session. This was about mid-morning. We advised them there was jury selection at that time. They turned & walked toward the Court Admin. office & sat on the bench there.

Court minutes for that day indicate that court convened at 10:04 a.m. when the court called the case and addressed the jury pool. The district court noted that the affidavits did not state a time and denied the mistrial motion, ruling that appellant's right to a public trial was not violated because court was not in session when the women were purportedly asked to wait outside the courtroom. The district court also denied appellant's posttrial motion for a new trial based on the same argument.

*Fair Trial*

Jackson County Sheriff's Deputy Shawn Haken was asked during trial if he was "familiar with" appellant, and he replied, "Yes." When asked why he was familiar with appellant, Haken said, "Past dealings." The prosecutor also asked Jackson County Sheriff's Deputy Donnie Schoenrock, the lead investigator, why he was familiar with appellant, and Schoenrock said, "I have had several contacts throughout the years."

Later in his testimony, when Schoenrock was asked whether he was "concerned about this particular buy," he replied, "We have to assume what we are doing, when you are dealing with drug dealers, you have to assume a certain level of danger." The

3

attorneys then approached the bench to discuss whether Schoenrock was about to testify about appellant's criminal history or his propensity for violence; defense counsel objected to admission of this evidence. After receiving an offer of proof, the district court limited Schoenrock's testimony to "precautions taken" by police because of "past contacts with [appellant]" and prohibited Schoenrock from using the word "violent" during his testimony. Schoenrock then testified that police took the following security measures in this case:

> Due to past experiences with [appellant] we took a few different precautions to be sure that everybody was aware of the situation, that everybody was aware of the situation that we knew that when we set up it would be a little closer than normal in our vehicle in case something [went] wrong that we could move in very quickly.

The jury found appellant guilty, and the district court imposed an executed sentence. This appeal followed.

## DECISION

### I.

The United States and Minnesota constitutions require that "the accused shall enjoy the right to a . . . public trial" in all criminal proceedings. U.S. Const. amend VI; Minn. Const. art. I, § 6. "[T]he public trial guarantee applies to all phases of trial, including . . . jury voir dire." *State v. Brown*, 815 N.W.2d 609, 617 (Minn. 2012). "Whether the right to a public trial has been violated is a constitutional issue that we review de novo." *Id.* at 616. "Denials of the public trial guarantee constitute structural error not subject to harmless error review." *Id.*

4

The two affidavits submitted with appellant's motion for a mistrial do not establish a factual basis for appellant's claim that his right to a public trial was violated by the bailiffs not allowing people into the courtroom. As the district court noted, the affidavits do not state a time when the two women appeared outside the courtroom; "mid-morning" could refer to a wide range of time. Also, as the district court explained, there was a period before voir dire began when members of the jury panel were milling around the courtroom that could incorrectly be referred to as "jury selection," even though the trial had not actually begun. And, although it was not a basis for the district court's decision, neither affidavit states that the two women were turned away and not allowed to enter the courtroom; they state only that the women sat on a bench outside the court-administration office after being told that the court was in the process of jury selection.

Defense counsel told the court that his wife and her friend were turned away from the courtroom "at approximately 9:00 a.m." Defense counsel did not witness events outside the courtroom. But even if we assume that this statement is accurate, it does not establish a constitutional violation because the district court found that court did not convene until after 10:00 a.m. The evidence in the record is inadequate to establish that the courtroom was not open to the public during appellant's trial.

Appellant correctly notes that if a district court determines that a courtroom should be closed, it must articulate the interest served that overcomes the defendant's right to be tried in open court, "'along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.'" *Waller v. Georgia*, 467 U.S. 39, 45, 104 S. Ct. 2210, 2215 (1984) (quoting *Press-Enter. Co. v. Superior Court of Cal.*,

464 U.S. 501, 510, 104 S. Ct. 819, 824 (1984)). Appellant argues that the court failed to make these required findings. But this argument rests on the unsupported premise that the district court closed the courtroom during appellant's trial. As we have already discussed, the record does not establish that anyone was kept out of the courtroom during appellant's trial.

## II.

Appellant argues that he was denied a fair trial because the district court admitted testimony that referred to appellant's prior contacts with police and to heightened safety concerns that police had when they were dealing with appellant. "[A] prosecutor may not attack the character of a defendant until the defendant puts his or her character in issue." *State v. Strommen*, 648 N.W.2d 681, 687 (Minn. 2002). Generally, evidence from which a jury could infer that a defendant has a criminal record is inadmissible. *State v. Richmond*, 298 Minn. 561, 563, 214 N.W.2d 694, 695 (1974); *see State v. DeWald*, 464 N.W.2d 500, 504 (Minn. 1991) (stating that preventing "a conviction based on prejudice created by evidence of other crimes is the underlying purpose" for excluding other-crimes evidence).

Appellant did not object to the testimony about prior contacts with police, but he did object to the testimony about heightened safety concerns. If there is no objection to other-crimes evidence, review is conducted under the plain-error standard. *Strommen*, 648 N.W.2d at 686. "The plain error standard requires that the defendant show: (1) error; (2) that was plain; and (3) that affected substantial rights. If those three prongs are met, we may correct the error only if it seriously affects the fairness, integrity, or public

6

reputation of judicial proceedings." *Id*. (quotations and citations omitted). "Where . . . a reference to a defendant's prior record is of a passing nature, or the evidence of guilt is overwhelming, a new trial is not warranted because it is extremely unlikely that the evidence in question played a significant role in persuading the jury to convict." *State v. Clark*, 486 N.W.2d 166, 170 (Minn. App. 1992) (quotation omitted). When there is an objection to admitting evidence, an appellant has the burden of proving that the district court erred in admitting the evidence and that he was prejudiced by the admission of the evidence. *State v. Sanders*, 775 N.W.2d 883, 887 (Minn. 2009)

> Depending on whether the district court's erroneous admission of evidence implicates a constitutional right, we have applied two different harmless-error tests for determining whether the defendant was prejudiced by the admission of the evidence. When the error implicates a constitutional right, a new trial is required unless the State can show beyond a reasonable doubt that the error was harmless. An error is harmless beyond a reasonable doubt if the jury's verdict was surely unattributable to the error. When the error does not implicate a constitutional right, a new trial is required only when the error substantially influenced the jury's verdict.

*Id*. (citations omitted).

Respondent argues that the prior-contacts evidence was admissible to prove identity because appellant had not been identified when the two officers testified. Appellant disputes whether his identity was at issue, but we need not resolve this issue because, even if the district court erred by admitting the testimony about prior contacts with police and heightened safety concerns, any error was harmless and did not affect appellant's substantial rights. Appellant was convicted of controlled-substance offenses

after he was observed by police on two occasions selling methamphetamine to a confidential informant during controlled buys that were audio-recorded by police.

Appellant argues that the evidence against him was not strong because the confidential informant was "a convicted felon and confidential informant, who was only working with police to obtain a favorable plea deal in her own drug case" and the case was tried three-and-a-half years after the second controlled buy. He also points to discrepancies between police reports and the trial testimony of police. But even in light of these facts, there is no reasonable possibility that the character evidence significantly affected the jury's verdict or otherwise affected appellant's substantial rights. Together, the police testimony, confidential-informant testimony, and audio recordings of the controlled buys that were played for the jury were overwhelming evidence that appellant sold controlled substances to the confidential informant during two controlled buys. In light of this overwhelming evidence, the jury's verdict was surely unattributable to the character evidence.

**Affirmed.**